## LITTLEJOHN *a.* GREELEY.

*Supreme Court, Fifth District; Circuit, September,* 1861.

LIBEL.—JUSTIFICATION.—RIGHT OF OPENING.—MALICE.—MEAS-
URE OF DAMAGES.

Of the right of opening, on the trial of an action for libel.

In action for libel in publishing of the plaintiff, the words among others, " he was
prominent in the corrupt legislation of last winter,"—*Held,* that these words in-
volved a charge of personal corruption ; and the action could only be sustained
by proof that the plaintiff acted and voted under mercenary appliances ; or that
he derived some personal advantage from the acts or votes he gave.

Such a publication is not a privileged one, on the part of the editor of a public
journal.

Where the court has ruled that an alleged libel contains a charge of personal cor-
ruption, the jury should receive this as the construction of the language.

A libel is a wilful and malicious publication concerning another ; but malice, so
far as the law requires it to sustain the action, is implied from the publication
of that which is untrue,—the law presuming it to exist in such a case. There-
fore *express malice* is not required to sustain the action ; but this presumption
may be repelled by circumstances that tend to disprove it.

If one, by mistake, or inadvertence, or want of sufficient knowledge, publishes a
libel, the law imputes malice only so far as to make him liable for such dam-
ages as the jury may deem reasonable under all the circumstances of the case.

Actual malice in the purpose and spirit of a libellous publication, or an entire ab-
sence of malice on the part of the defendant, are both subjects of proof, outside
of the mere fact of publication.

If actual malice is shown to exist, it will not protect one who has published that
which is *prima-facie* libellous, although without this the publication would be
privileged, or even justifiable.

If the plaintiff has proved the existence of actual malice, that may be considered
by the jury in aggravation of damages, and those of a punitive character may
be given.

The last is the only case in which punitive damages can be had, but only those
which naturally flow from the utterance of a libel. Where a malicious char-
acter stamps the publication, the jury may go beyond the ordinary character of
damages, and give those which are called " punitive."

If the defendant has satisfied the jury that he was not actuated by malice, but
published what he did without any malicious motive, and believing it to be true,
that is to be considered by the jury, and should materially mitigate the dam-
ages.

The amount of the damages in an action for libel is in the sound discretion of the
jury. They are intended to repair the injury done to the plaintiff ; and the
pain and mental suffering which he has undergone in consequence of the libel

uttered against him, are fair considerations for the jury. And in estimating the damages upon the foregoing principles, the character, condition, position, and influence of the respective parties are to be taken into the account.

Trial at circuit.

This was an action brought by Dewitt C. Littlejohn, who had been speaker of the Assembly of this State in the year 1860, against Horace Greeley, one of the editors, proprietors, and publishers of the New York Tribune, to recover damages for an alleged libel published in that paper, September 26, 1860, which was set forth in the complaint with the *innuendoes* as follows : " A correspondent earnestly inquires our opinion concerning the nomination for members of the Legislature of D. C. Littlejohn at Oswego (the plaintiff meaning), and of Austin Myers at Syracuse. On this subject our opinion has been so often expressed, that it cannot be in doubt. Both these persons were prominent in the corrupt legislation of last winter. Accordingly, both of them ought now to be defeated. Or, if they must be sent back to pursue their career at Albany, it should not be the work of Republican voters" (meaning and intending thereby to charge that the legislation of the Legislature of the State of New York last winter was corrupt, that the legislators thereof were influenced by corrupt motives, and that the plaintiff was prominent in such corrupt legislation, and that, being thus corrupt, he ought not to be re-elected to the said Legislature).

The answer of the defendant set up four separate defences.

First, that the words were printed and published by him, in answer to inquiry, as a public journalist, in good faith, in the true and honest belief that the same was in every respect just and true, with good motives and for justifiable ends; to wit, that some persons other than the plaintiff, and more fit and proper to be a legislator of the State of New York than the plaintiff, should be elected as a member of the Legislature instead and in place of the plaintiff, who was so then in nomination, and a candidate for election, as a member of such Legislature, and canvassing for votes in favor of his election, in preference to a candidate who, as the defendant verily believed, was a better and a fitter man, one Leander Babcock, who was the candidate in opposition to plaintiff.

Littlejohn *a.* Greeley.

The second defence consisted of a statement of certain acts passed by the Legislature of 1860, which were averred to be mischievous and injurious to the public interest, and popularly denominated "corrupt legislation;" that the plaintiff, as speaker and otherwise, actively exerted himself in procuring the passage of such acts, and advocated and voted for the passage of them in the Assembly; that these acts were of a nature and tendency highly prejudicial to the interests and welfare of the people of this State; that at the time when the plaintiff so voted for the same, the plaintiff well knew and fully believed such to be the evil nature and tendency of such acts, and, as he also well knew, was bound in law and morals, and by his duty as such member of Assembly, to vote against the same; yet he, the said plaintiff, wickedly, wilfully, and corruptly disregarding his said duty, and with the dishonest intent and purpose of working such prejudice to the interests and welfare of the said people, and sacrificing the same to advance personal and individual interests of divers persons interested in such acts, and that defendant did with good motives and for justifiable ends, and in accordance with his duty as such journalist, editor, and publisher, and in good faith, and without any malice, or other evil or unjustifiable motive, cause to be printed and published the said words in said complaint set forth.

For a third defence, it was alleged that the passage of the acts aforesaid was promoted and aided by improper and corrupt influences brought to bear upon the Legislature and its individual members: and that such legislation was corrupt, and was so generally denominated, and that the plaintiff had been prominent in aiding and promoting such legislation, and that the defendant, without malice, and in the performance of his duty as a public journalist, published the words complained of in canvassing the merits and publicly discussing the fitness of all persons who were candidates for election to public office or places of public trust.

The fourth defence consisted of the allegations that the acts aforesaid were in fact corrupt legislation aided and abetted by lobby members, and by persons who had a personal, private, and pecuniary interest in the said acts, and by persons who sought, in obtaining the passage and enactment thereof, and of each of them, to promote their own personal and private inter-

est, in disregard of and to the detriment of the general and pub-
lic interest, and the interest and well-being of the State, and the
people thereof at large. And that the passage of said acts was
aided, and that the same were passed and enacted by the said
Legislature and by the said Assembly, by means of and through
the improper and corrupt influences aforesaid, brought to bear
upon individual members of said Legislature and said House of
Assembly, and that the said individual members of said Legis-
lature and of said House of Assembly were persuaded and influ-
enced by unstatesmanlike, wrong, selfish, sordid, pecuniary, and
corrupt motives in passing, enacting, advocating, and voting for
the passage and enactment of said acts, and each of them, and
so promoted, advocated, passed, and enacted said acts, and each
of them, influenced by favor and affection, reward, and the hope
of reward, and from pecuniary and corrupt motives, aims, ends,
and purposes, and for and in the hope of receiving money, fran-
chises, privileges, and other pecuniary, selfish, and mercenary
considerations, motives, aims, ends, and purposes, as well for
themselves as for their friends and other persons who might
and were expected to account to such individual members of
said Legislature and House of Assembly for such pecuniary gain
or advantage as should or might come to them from, on account
of, or by reason of such legislation. And that the plaintiff was
active and prominent in said legislation, and voted for all these
acts, and that the words complained of were not understood by
any person to have any other intent or meaning, and the
defendant had no other intent or meaning in the use and
publication of said words, than to charge the said plaintiff as
herein aforesaid, nor were the said words understood to charge
any thing other than as in this answer is hereinbefore set
forth to be the truth concerning said Legislature and the said
plaintiff.

That the words complained of were true, and that said print-
ing and publication were done and caused to be done with good
motives, and for justifiable ends, and without malice or other
improper motive.

The answer concluded in these words: "And fifthly and sep-
arately, the defendant further asserts and states the several facts
and circumstances above in the defences stated, and will give
the same in evidence on the trial of this action, in mitigation,

to reduce the amount of damages which the plaintiff may claim to recover."

The issues thus joined were tried before Mr. Justice Bacon, at the Oswego circuit. After the jury were impanelled, the defendant claimed the opening.

*Isaiah T. Williams,* for the defendant. — The criterion of opening is, who has the affirmative? The answer contains not a syllable of denial. The test of to determine the order of beginning a trial is, to consider which party would be entitled to a verdict, supposing no evidence given on either side, as the burden of proof must lie on his adversary.

*Henry A. Foster,* for the plaintiff. — I. The plaintiff would be entitled to prove other publications under the present complaint, to show express malice to enhance our damages.

II. The rule cited does not apply to issues of this nature. (*Graham's Pr.,* 289; Fry *a.* Bennett, 3 *Bosw.,* 200.)

BY THE COURT. — BACON, J. — I do not know that there has been any rule established in the courts of this State; I am certain there is not any in the rural districts. But it seems to me that the case in 3d Bosworth is very clear authority for the right of the plaintiff to open. I shall rule that the plaintiff has the right accordingly.

At a later stage of the trial, after the plaintiff rested, the defendant called a witness who testified to the passage of certain acts by the Legislature of 1860. The witness continued: "I considered Mr. Littlejohn the most influential member of that Assembly."

*Ques.* "Speak of his ability to pass or reject bills—the bills in question and other bills."

The plaintiff objected, on the ground that no man could speak of Mr. Littlejohn's power.

*Isaiah T. Williams,* for the defendant. — We propose to prove first, that there was corrupt legislation during the session of 1860. We specify certain bills which we say we will prove were corrupt measures. Our purpose now is to prove that these measures were in point of fact corrupt, and, secondly, that the plaintiff was a prominent participant in that corrupt legisla-

tion: that Mr. Littlejohn was cognizant of and knew of the corruption of these measures; and that knowing these facts and having full knowledge of that corruption, he lent his aid and influence to carry them, and by virtue of his exertions, power, industry, and appliances he was successful in carrying them through. All those measures were corrupt, and he was prominent in them from motives of which I scarcely feel myself capable of speaking, from the magnitude of their enormity.

*Charles B. Sedgwick*, for the plaintiff.—The counsel endeavors to avoid the real question in the case. They must prove, not that there was unwise legislation, not that there was legislation that had better not have been, but they must prove that there were bills passed there by means of corruption, and that the legislator was bribed or improperly influenced in other ways; and they must point that proof directly to the plaintiff, and show that he advocated, or voted for, or assisted in the passage of bills, induced to it by bribery, or interested personal motives that are equivalent to bribery. Now, if I understand the gentleman opening, they do not propose to prove that Mr. Littlejohn was guilty of this; he avoided this throughout. They do not expect to prove that anybody put money into Mr. Littlejohn's palm, or that he has received any thing, or that he has used a cent of money to induce other persons to vote. The only allegation is, that, in regard to certain bills, he advocated them and voted for them. That he had a perfect right to do. It does not go one step towards making out this justification; unless it goes beyond a mistake in judgment, and beyond an error, or beyond being properly influenced to vote for an unjust or unwise measure. It must have been through corruption and through corrupt motives. They are charged upon the plaintiff in this libel, and unless their proof reaches this point, it goes for nothing, and offers no legal defence. It does not justify the charge made to appeal to the feelings of the jury, to prejudice the jury, or to defend this action on what other men have done. The counsel now does not aver that he will show that this corruption reached Mr. Littlejohn, that he was bribed, or that he made an improper use of his position in the Assembly to bribe. We will admit that these bills are all corrupt, if you choose. Suppose there was bribery there. Suppose these appliances,

on which the gentleman dwelt so long this morning, were used: what of it, if it does not reach Mr. Littlejohn? Nobody else is on trial here. He is the man who is to be affected; and because he has voted, because he has large influence in the Assembly, because he may influence by his eloquence or example to vote for a measure—all that does not affect the point of this controversy a particle. The whole tenor of the speech of the defendant's counsel is, that somebody was bribed; he dare not say it was Mr. Littlejohn. I do not speak merely of personal bribery, but, also, of any conduct unbecoming a legislator; and on this point we challenge scrutiny. And the gentleman can go through with his examination to show that Mr. Littlejohn or anybody else was cognizant of these facts. But they do not expect to reach that point. They propose to show that there was corrupt legislation; that these measures were unwise and imprudent; and because Mr. Littlejohn was a member of the Legislature, and had the audacity to speak and vote upon them, that he was prominent in the corrupt legislation.

BY THE COURT.—BACON, J.—We have desired to have distinctly presented the scope and extent of the defence which is introduced here, for it is important for us to get at the precise issue, and to know what is to be tried and what we are called to pass upon. That involves necessarily the construction of the article in question, and the character and purport of the alleged libel. The libel complained of is in the following words:

"A correspondent earnestly inquires our opinion concerning the nomination for members of the Legislature of D. C. Littlejohn at Oswego, and Austin Myers at Syracuse. On this subject our opinion has been so often expressed, that it cannot be in doubt. Both these persons were prominent in the corrupt legislation of last winter. Accordingly, both of them ought now to be defeated. Or, if they must be sent back to pursue their career at Albany, it should not be the work of Republican voters."

That allegation is a charge of personal corruption in respect to the plaintiff—that he " was prominent in the corrupt legislation of last winter." And involving that proposition, and stating that as a matter of fact, it is not, in my judgment, a defence

that the legislation, with respect to other persons, and other parties, and other subjects, was of an improper or corrupt character. To make this charge is to impute personal corruption to the plaintiff; and I hold, therefore:

*First :* That the publication involves a charge of personal corruption, and can only be sustained by proof tending to show that the plaintiff acted and voted under mercenary appliances, or, in other words, that he was bribed to act and vote as he did ; or that he derived some personal advantage from the acts he performed or the votes he gave.

That is my judgment of the character of this libel.

*Second :* Now, then, if that be so, I hold that it does not sustain the defence to show that the Legislature was reported and believed to be corrupt; or that other members acted under corrupt influences; nor that such legislation was, in fact, or was believed to be, injurious to the public and only designed to advance private interests.

That is my judgment upon that proposition. It follows, then, if that be so, that the matters set forth in the 3d and 4th answers, which set up corrupt legislation in general terms, and that Mr. Littlejohn voted and acted in that Legislature, constitute no defence, and no proof can be given under these answers. I decided preliminarily, in overruling the motion to dismiss the complaint, that it involved a personal charge ; and also that the publication was not a privileged one. The first answer sets up that the publication was a privileged one. Upon that subject I hold:

*Third* : That the publication is not a privileged one on the part of the defendant, as the editor of a public journal. The press is allowed to comment fully and freely upon public characters, from the President down, and to utter these things with the utmost freedom—to charge official men with incompetency and imbecility, with ignorance or corruption—to charge judges with ignorance, incompetency, or venality—and the proof of the truth of any of these allegations is a perfect defence. But the press has no right, under its guarantied freedom, to publish what is not true. It has no right to do that which shall be an injury to the country, or which shall wrongfully assail private character. These assaults on individuals or upon private character do not become privileged because they are uttered by

the editors or proprietors of a newspaper. They have large protection and large immunities, and it is right they should have; but they do not extend to the length of making publications of this character privileged within the rule.

*Fourth:* It follows, therefore, that the matters set forth in the first, third, and fourth answers constitute no defence; and, therefore, as I conceive, no proof can be given under them.

The proof must be confined to such allegations as impute improper, wicked, or corrupt conduct to the plaintiff; and in this case, the second answer, as I understand, substantially does make that allegation. I hold, therefore:

*Fifth:* That the proof must be confined to the second answer, and must be such proof as will tend directly to prove that the plaintiff wickedly, wilfully, and corruptly voted for those acts which are set forth in this answer, and they can only be supported by proof of personal corruption, or to such evidence under the fifth answer as is competent in mitigation.

In that aspect of the case, the proof offered is inadmissible, Under these rulings, the proof must necessarily confine itself within the line of evidence which I have indicated.

*John K. Porter*, for the defendant.—Do I understand your honor to hold that when we charge corrupt legislation, and that the plaintiff corruptly advocated it, we cannot prove the truth of the entire proposition?

THE COURT.—You can prove that he was corrupt by appliances or influences made to him, but you cannot prove the proposition that the legislation was corrupt, and that he merely advocated and took part in that legislation.

After consultation, the defendant's counsel made the following offers to prove:—*First:* The defendant offered to prove that the acts set forth in the answer were severally passed by the votes of members of the Assembly, of whom a majority were bribed to vote therefor, and who voted therefor corruptly; and the defendant claimed that this proof was admissible for the purpose of justifying a portion of the matter charged as libellous, proposing to follow it up with proof justifying the residue.

Excluded.

*Second:* The defendant offered to prove the same facts in mitigation of damages.

Excluded.

*Third:* The defendant offered to prove the same facts for the purpose of showing the truth of the article not embraced in the complaint, but read in evidence in aggravation of damages.

Excluded.

*Fourth:* The defendant offered to prove the same facts, and that the plaintiff voted for and supported, in debate, the passage of those acts, with notice that a majority of those who supported them were bribed, and that certain of the parties soliciting their passage and seeking the benefit thereof had bribed them, claiming that this evidence is admissible for the purpose of justifying the article alleged to be libellous.

Excluded.

*Fifth:* Offered same facts as in last proposition in mitigation of damages.

Excluded.

*Sixth:* Offered same facts to show the truth of the article from the Tribune read in evidence in aggravation of damages.

Excluded.

*Seventh:* Offered to show that certain members of the Assembly who voted for the railroad bills mentioned in the answer, did so under and in pursuance of a corrupt agreement with parties named as grantees of the franchises conferred in the acts, to apportion and divide the proceeds of such franchise, exceeding two millions of dollars, between them and private friends of such members, embracing among others the brother and brother-in-law of the plaintiff; and that the plaintiff, with notice of these facts, and for the purpose of securing such benefit to his brother and brother-in-law, and knowing that such bills were prejudicial to the public interest, voted for and advocated them in debate, and exercised his influence over other members of the House to secure their passage—the defendant claiming that this evidence is admissible in justification of the charge of corruption.

Excluded.

*Eighth:* Offered to show the same facts, with the further fact, that the plaintiff, in violation of the rules of the House, per-

mitted his brother and brother-in-law, and other parties to be benefited, to be admitted upon the floor of the Assembly during the sessions thereof, when they were not entitled thereto; the defendant claiming that from all these facts the jury would have the right to infer a corrupt intent on the part of the plaintiff.

Excluded.

*Ninth:* Offered to show all the facts stated in the foregoing propositions. Claiming that the jury have a right to infer therefrom, that the plaintiff in voting for said acts respectively, did so from corrupt motives, and for private objects, in violation of his oath as a member of the Assembly.

Excluded.

Defendant claimed that it is a question for the jury, whether the article claimed to be libellous charged the plaintiff with corruption.

The plaintiff objected to these propositions, as inadmissible in evidence under the ruling of the court; except that the defendant may be allowed to show that the brother and brother-in-law of the plaintiff, or either of them, was interested, *to the knowledge of the plaintiff*, in any stock in any of the roads *named in the defendant's answer to his complaint*, and that his vote upon any of the said bills was influenced by such knowlededg.

The court sustained the objection, under the ruling already given.

*Mr. Porter.*—We offer to prove further, the facts stated in the first defence.

Excluded.

We offer to prove the facts stated in the third defence.

Excluded.

We offer to prove the facts in the fourth defence.

Excluded.

We also offer to prove them separately in mitigation of damages.

Excluded.

The defendant subsequently offered himself as a witness, and testified to the absence of malice in publishing the article, and to his belief at the time of the publication. Other evidence

was introduced, conformably to the ruling of the court stated above, and the case was submitted on both sides.

Before the charge, the defendant asked the court to charge the jury—

*First:* That if they believed, from the testimony, that the defendant acted in the matter of the publication in question, without any malice or mischievous intent, but solely from the sense of duty to the public, they must find for the defendant. The court declined to charge this proposition.

*Second:* The defendant asked the court to charge the jury, that it was a question for them to say in what sense the words complained of were used. The court declined.

*Third:* The defendant asked the court to charge the jury, that it is a question for them to determine in what sense the words complained of were understood. The court declined.

*Fourth:* The defendant asked the court to charge the jury, that malice on the part of the defendant was essential, in order to maintain the action. The court declined.

*Fifth:* The defendant asked the court to charge the jury, that in the absence of all malice on the part of the defendant, this action could not be maintained. The court declined to charge the fourth and fifth proposition as desired, but charged in the language of the charge to the jury hereinafter given, on that subject, and declined to charge otherwise.

*Sixth:* The defendant asked the court to charge the jury, that if they believed the testimony of defendant, the presumption of malice, which arose from the face of the libel, was rebutted. The court declined to charge this proposition, but charged as in the seventh proposition hereinafter stated and submitted to the jury, and declined to charge otherwise.

*Seventh:* The defendant asked the court to charge the jury, that if they believed, from the testimony, that the defendant, at the time of the publication in question, believed it to be true, and that in coming to that belief he had exercised due care and diligence, prudence and discretion, to ascertain the truth of the charge, the defendant was entitled to their verdict. The court declined to charge, except as in the seventh proposition as above mentioned.

*Eighth:* The defendant asked the court to charge the jury, that if they believed that the defendant made the charges in

question solely from a sense of duty, he was entitled to their verdict, even though they should believe that it was a mistaken sense of duty. The court declined.

Mr. Justice BACON then charged the jury as follows:

GENTLEMEN OF THE JURY: The duty that I have to discharge in this case is a very plain and simple one, and I shall proceed to its discharge in a very plain and simple manner, and I trust with commendable brevity. And I shall do so entirely unaffected by any outside considerations, and utterly irrespective of any consequences which may be supposed to follow from the discharge of that duty. It is the privilege, and business, and duty of the counsel to present the case to the jury, with all the ability, and the eloquence, and the zeal which have been manifested in this case by the respective counsel who have addressed you. It is their privilege and their right to make to you elaborate, learned, and lengthy arguments, and, if they shall choose, to make earnest and even passionate appeals to you.

The business of the court and the duty it has to perform are quite different; they demand no such zeal, no such earnestness, and no such sensibility. I have nothing to do, gentlemen, but to direct you to some plain, simple propositions of law, which I suppose to be involved in the case, and which are to be taken by you as landmarks and guides, and to suggest to you a very few topics to which your attention should be directed, when you come to deliberate on the case in the jury-room.

And I must ask you, gentlemen, in the first place, to dismiss from your attention a very considerable portion of that which has been talked about here. Because, in the shape which the case has assumed, and within the contracted issues to which I felt it my duty to confine the cause, a great deal which was said in the opening of course would now be irrelevant to the case. That opening was adapted to a state of things which the counsel very rightfully, as he deemed was the law, supposed it to be his duty to spread before you. And if I had construed the libel agreeably to the view taken of it by the counsel, the field would have been a very large and a very wide one, and his opening none too extended for the ground he would have felt himself obliged to occupy; but having made a ruling in the early part of this case, which, whether right or wrong, is for the present

the law of the case, we are brought down to a very narrow issue, and a very few points to which it is needful that your attention should be directed.

The counsel for the defendant claims that the jury is to judge whether this is a libel or not, and whether it imputes personal corruption to the plaintiff or not; and that in this respect you are at liberty to construe the language of this libel as you see fit, and as in your judgment it shall seem to demand at your hands. Now, gentlemen, as a general proposition I do not dissent from that; for the general rule of law is, that the jurors are the judges as to whether the publication alleged to be libellous is so or not. I admit that to be the general rule of law, but I do not think it to be the invariable rule of law; and I think a case could be presented—and unless I much misconceive it, this case is one—where the general rule does not apply. If a libel is doubtful and uncertain in its meaning; if it consists of a variety of allegations upon a variety of subjects; the duty of construing them may very properly fall within the province of the jury. And I can illustrate that as well by the case of Fry *a.* Bennett, which has been cited to you, as by any other case. In that case, the libel complained of consisted of a variety of allegations, some of which consisted of nothing more than what might be deemed fair, though perhaps severe criticisms upon the conduct of the plaintiff in that suit, as a conductor of an opera; and there were other allegations that imputed to him that which was in its nature disgraceful, and perhaps even criminal. I do not stop to characterize them, but there was a variety of allegations of this kind, in regard to some of which the defendant claimed they were privileged, and in regard to all of which the plaintiff claimed he was entitled to recover, because they were not within any such privilege. The court, in giving the case to the jury, told them they must take these libels themselves, and discriminate with regard to what portion of them came within a just definition of legitimate criticism, and that which was without the bounds of just criticism, and was defamatory, injurious, and libellous in its character. That case well illustrates a class of cases where the jury are indeed the judges, and should rightfully be the sole judges, of the character of the libellous charge alleged.

But in this case, gentlemen, I was obliged to make a ruling

in order to determine what were the issues to be tried, and in order to confine the proof to what was fairly triable before you, and I was obliged myself to give a construction to the language of this libel; and I gave that construction to it, in which I laid down the rule that the libel imputed personal corruption to the plaintiff, and that any proof outside of that was irrelevant proof, and therefore not admissible. I say I was obliged to make that ruling; for the question necessarily arose, and the case was one which, in my judgment, called for it; and, having made that ruling, it is to be taken as the law of the case now, and to be held as the law throughout. Now, that ruling may have been erroneous, and altogether wrong; and it is very likely that, having begun with this error, I may have tottered on in blunders continuously; but there is great satisfaction in knowing that this wrong, if it be such, is not irreparable, and will not injuriously affect the defendant in this case; for, happily, there is another tribunal which revises all my errors—all errors committed in the circuit, in the haste in which causes are tried there, and in the absence of all needful deliberation—a tribunal that sits in calm judgment on all these cases, and rights the wrong where it exists; or, if it does not exist, affirms the ruling. Therefore, gentlemen, there will be an opportunity hereafter to correct these errors into which I may have fallen, and the defendant will be deprived of no just right which pertains to him in that regard. That being the case, the first proposition of law which I have to lay down is this:

*First:* The court having ruled that the alleged libel contained a charge of personal corruption, the jury will receive this as the construction of the language, and consequently that the words are in law libellous.

You will take that, gentlemen, as the ruling of the court in this case. The construction I give to the words is, that it imputes a charge of personal corruption, and, therefore, is in itself libellous. This relieves you from the duty of construing it for yourselves.

*Second:* A libel is a wilful and malicious publication concerning another; but malice, so far as the law requires it to sustain the action, is implied from the publication of that which is untrue,—the law presuming it to exist in such a case. Therefore, express malice is not required to sustain the action; but

this presumption may be repelled by circumstances that tend to disprove it.

Now, in this, I do not know but I may be supposed to run counter to the decision of the Court of Appeals, in the case to which my attention was called. If I do, I shall be found to be in error; but I have always supposed, that the above statement was a true proposition in law, from the earliest day in which my attention as a student was ever called to the law appertaining to libel and slander. And, although Judge Selden seems to imagine a sort of imaginary and attenuated line between malice in law and malice in fact, yet, as I have always understood the law to be, from the falsity of the publication malice is implied, though it may not in point of fact exist; because no man is at liberty to publish any thing but the truth; and if he publishes that which is not true, the fact of its untruth, in the law, implies malice in the publication. It is very true, that in that case Judge Selden held that the inference of the law did not exist; and the reason was, that it was a privileged communication. If I had held in this case, that the publication here was privileged, then the inference of the law would have been displaced, it would not have existed. In that case, in the Court of Appeals, the communication was a privileged one, and, therefore, it was protected *prima facie*, and the plaintiff was obliged to show, in order to maintain his action, that it was uttered maliciously. Because, although when a party has uttered a truth, yet if he is actuated by malice in that regard, he is still liable to be prosecuted and pay damages. He pays them in that case because he is actuated by malicious motives extending beyond the mere fact of publishing that which is not true. That proposition, then, is the law, which I lay down for your guidance—that the law implies the publication to be malicious, if it be untrue; and in this case the defendant, standing unjustified, and the imputation being one of personal corruption, and there being no proof that there was personal corruption, the allegation is an untrue allegation; therefore, by law, is impliedly malicious.

*Third:* If one by mistake, or inadvertence, or want of sufficient knowledge, publishes a libel, the law imputes malice only so far as to make him liable for such damage; as the jury may deem reasonable under all the circumstances of the case.

The law only imputes malice just so far as to make him liable for damages which may seem reasonable. They may be nominal damages, or otherwise, just according to the circumstances, there being nothing to enhance them to any aggravated degree; and this covers that class of cases.

*Fourth :* But there may exist actual malice in the purpose and spirit of the author of the publication; or there may be an entire absence of malice on his part; and both are subjects of proof outside of the mere fact of publication.

Now the plaintiff may prove express malice; he may prove that the party has said, " I will publish such an article against such a man; I mean to follow him up and have vengeance against him—I will have it." Expressions of that kind indicate a purpose and spirit and intent to inflict an injury, or at all events, that the party is not actuated by an innocent purpose, and that he does not act by inadvertence or through mistake—that it is not an error of judgment or of information, but that it is a deliberate design to inflict an injury, and that he sets about preparing the means by which the injury is to be inflicted. On the other hand, there may be a perfect absence of malice, there may be no thought of ill-will, and no purpose to injure, but simply to utter what the party thinks to be true, with a motive which seems to him to justify it; or, it may be, that he seems to be called upon by some great public exigency, to utter what he thinks just and right, though it may be mistaken, untrue, and false, yet he has not the *animus* and the purpose to inflict an injury; therefore, he has no actual malice in the case.

*Fifth :* If actual malice is shown to exist, it will not protect one who has published that which is *prima facie* libellous, although without this the publication would be privileged, or even justifiable.

This is only repeating what I said in a more specific form. Wherever you show actual malice, you deprive the party of any justification he had by reason of the fact that what he said was privileged; because, if a man will say what is privileged, with a wicked and malicious purpose, it does not excuse him.

*Sixth :* If the plaintiff has proved here the existence of actual malice, that may be considered by the jury in aggravation of damages, and those of a punitive character may be given.

And that is the only case in which punitive damages can

be superadded, but only those which naturally flow from the utterance of a libel. It is where a malicious character stamps the publication, that you can go beyond the ordinary character of damages, and give those which are called "punitive," or sometimes "vindictive," which is not a good term.

*Seventh :* If, on the other hand, the defendant has satisfied the jury that he was not actuated by malice, but published what he did .without any malicious motive, and believing it to be true, that is to be considered by the jury, and will materially mitigate the damages.

That is fact *e converso,* and it reduces the damages. If the defendant shows that he was actuated by good motives, and had no malice in his heart, no design to injure, and no purpose of vengeance, and that he did not indulge in any vindictive, injurious, and hateful feelings towards the party, but that he uttered what he believed to be true,—what he had heard from others, and what he supposed he had a right to publish because it was true,—in the absence of all feelings of hatred, animosity, and ill-will, then, gentlemen, it is very clear that the damages should be essentially mitigated; because you take out of the slander, or the libel, the sting and its intensity, and you strip it of that which gives it its worst character and form.

Whenever the defendant presents himself for proof of this kind, the plaintiff can again prove, that on other occasions, the party has made malicious and defamatory attacks, in a harsh and cruel manner. On the other hand, the defendant has a right to show that his personal relations towards the party were always good and kind, and that he had no personal ill-will towards him, and did not look upon him in the light of an enemy; but in respect to what he uttered, he did what he believed to be true, and what he thought he was called upon to utter by high considerations of the public good. If such a state of things exists, then the damages, as you perceive, are greatly mitigated.

Now, in this case, upon one side it is claimed that there is some proof that some malicious motives existed. On the other side, it is insisted that there is proof of the absolute and entire absence of all malicious motives. The proof on that subject lies within a very narrow compass; it was drawn entirely and exclusively from the defendant himself. He states upon the

stand, that, so far as he knows, his personal relations towards Mr. Littlejohn were of a friendly character; that, so far as he knew himself, he had no malice in making the libel.

On the other side, it is insisted that, in addition to the intrinsic character of the act itself, he had published in regard to the plaintiff other statements, and had made other allegations in regard to him; that he had opposed his election to the Speakership of the House, and that he had published something with regard to him, which, on being asked to explain and retract, he had declined to do so, except in the way which he thought it was only just and right he should be called upon to explain. And it is said this shows an inimical and malicious feeling. It will be for you to judge with regard to this. Here is the statement of the defendant, in which he states just what he did and just what he thought. And the letter which has been read is also before you, gentlemen, and in evidence. I must say, with regard to it, that I think it a very manly and honorable letter, and such as indicates on the part of him who wrote it, no feeling which any honorable mind might not entertain. Still, you are the judges with regard to all that, and with regard to the conduct of the defendant, on the occasions which have been spoken of; you are to say whether, in your judgment, they indicate that he was actuated by motives of ill-will and malice, or whether, divested of all motives of that kind, he did what he did in good faith, and in the exercise of what he thought were his just rights, without any design or intent to injure or defame or oppress the plaintiff.

I leave that question of this case with you, gentlemen; your conclusions upon it are to be drawn from the testimony which is in the case, and not from any thing outside, for upon this particular head, you have nothing to enlighten you, except the testimony which was given here upon the stand. Finally, gentlemen, I have to say to you:

*Eighth:* The amount of damages are in the sound discretion of the jury; they are not to be measured by any specific standard of dollars and cents; that is, the court has no rule to give, by which you are to be guided; you are the judges in that respect, you are the arbitrators in respect to what shall be awarded in compensation. They are intended to repair the injury alleged to be done to the plaintiff; and the pain and mental

suffering which he has undergone, in consequence of this libel uttered against him, are fair considerations for the jury. And in estimating the damages upon the foregoing principles, the character, condition, position, and influence of the respective parties are to be taken into account.

One party may be more likely to suffer from a libel than another; for all men do not suffer alike by any means. Men differ in constitution and in temperament; they differ in their surroundings and relationships in life; they differ in the position they occupy. The plaintiff is a public man—a man of mark and distinction—a man who had occupied an elevated place in the Legislature of the State; and such a man would be likely to feel a libel with greater acuteness than one living in a more obscure position, and travelling in a smaller round, and occupying a much more limited field. On the other hand, the power of the party injuring, if any injury has been inflicted, may also be taken into consideration. The position the defendant occupies as the proprietor of an influential press—a paper maintaining the largest circulation, certainly, of any paper on this continent, and probably in the world, much read, extensively distributed, and widely appreciated, and which has become almost a public institution in the State, under the guidance of great ability—is to be considered. An engine of this description, of course, is capable of inflicting more injury than one of inferior character, smaller circulation, and a lower type of respectability. For if an injury has really been inflicted, its intensity must be aggravated by the high character of the quarter from whence it comes. All these considerations may be taken into account by you, in arriving at a just conclusion in this case. They are all I have felt it my duty to mention to you, for I do not regard it as any part of my province to step out of the plain, simple path which the law has marked out for me—to lay down the law which I suppose enters into the case, and ask you to give to those propositions such weight, and to those considerations such importance, as you think they are entitled to. Upon the whole subject of damages, in a case where the jury come to the conclusion that a right to recover them has been established, the rule is, perhaps, nowhere better expressed than in the words of Justice Bosworth, in the case of Fry a. Bennett, which I will repeat to the jury, as containing a proper direction for them in

this case : "The true rule is, that if the defendant fails to justify, the plaintiff is entitled to recover, at all events, his actual damages. He has a right to these, although the defendant, at the time of publishing the libels, believed the facts alleged to be true. The actual damages are to be determined by the jury, in the exercise of a sound discretion, upon a careful consideration of the offence or misconduct imputed to the plaintiff, the circumstances of the publication, the extent of its circulation, and the natural and necessary consequences of such a publication, according to the results of human observation and experience." Be yourselves the judges as to what shall be the result of this suit. I have no personal desire, nor wish, nor purpose, other than that you shall do justice, exact and ample justice, between these parties.

The counsel for the defendant desired the court to charge further, that the act of Mr. Greeley in opposing the election of Mr. Littlejohn as Speaker, after the transaction in question, and after this suit had been threatened, cannot be taken in evidence. The court declined.*

---

* The cause was then submitted to the jury, who, after a long absence, failed to agree, and were discharged.