THE PEOPLE, PLAINTIFF AND RESPONDENT, *v.* GARCÍA, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in a Prosecution for Slander.

No. 681.—Decided July 15, 1914.

SLANDER—CRITICISM OF PUBLIC OFFICIALS—FREEDOM OF SPEECH.—The slanderous language which an accused is charged with using in criticising public officials should be construed in a liberal sense, having regard for the public welfare, freedom of speech and the right which every citizen has to criticise public officials in matters of general interest.

ID.—FREEDOM OF SPEECH.—In construing Act No. 49 of March 9, 1911, relating to slander, due regard must be had to the freedom of speech guaranteed by the Act of February 27, 1902, defining the rights of the people, and the constitutional provision relative to the same matter.

ID.—CIVIL ACTION FOR SLANDER.—The principles governing civil actions for damages for slander are applicable, by analogy, to criminal actions for the same offense.

ID.—SLANDEROUS STATEMENT.—The "slanderous statement" to which section 3 of Act No. 49 of March 9, 1911, refers must include the elements stated in section 1 or 2 of the said act in order to constitute the offense of slander.

ID. — SLANDEROUS STATEMENT — CONSTRUCTION OF LAW — ERRONEOUS TRANSLATION.—According to Act No. 49 of March 9, in order to constitute the offense of slander it is necessary that the commission of a crime be charged or that the words considered slanderous be equivalent to "*relato*" or "*informe*" which is the correct translation into Spanish of the words "tale" or "report" used in the English text of the said act.

ID.—LOAFER AND VAGABOND.—The public statement that a mayor is a loafer and a vagabond and that he should employ his time at work and in attending to the needs of the poor is not a "tale" or "report" in the sense in which these words are used in section 2 of the act to define and punish slander, nor does it charge the commission of a crime, therefore it is not slander.

CONSTRUCTION OF LAW—DISCREPANCY BETWEEN ENGLISH TEXT AND SPANISH TRANSLATION.—When a statute is of American origin, the original English text must govern in case there is inconsistency between said text and the Spanish translation.

The facts are stated in the opinion.

*Mr. Charles E. Foote, fiscal,* for The People.

*Mr. Rafael López Landrón* for the appellant.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

This case originated in the Municipal Court of Vieques upon the following complaint:

"I, Carlos Benítez Castaño, mayor and resident of Vieques, Porto Rico, Guzmán Benítez Street, of age, make complaint against Emilio García for the crime of slander (misdemeanor) committed as follows: That on November 2, 1913, at 4.30 p. m., more or less, and in the market place of the municipality of Vieques, within the municipal judicial district of Vieques, Porto Rico, pertaining to the judicial district of Humacao, P. R., the accused Emilio García maliciously, wilfully and falsely and with the intention of injuring my honor, reputation and worthiness, publicly uttered words in disparagement of my reputation such as 'the mayor of this town of Vieques is a vagrant (*vago*), is a vagabond (*vagabundo*), he should devote himself to work and to the necessities of the poor,' contrary to the law in such case made and provided and against the peace and dignity of The People of Porto Rico. Signed. C. Benítez Castaño, mayor of Vieques, complainant."

Upon the trial *de novo* upon the same complaint in the District Court of Humacao the defendant was found guilty and sentenced to pay a fine of $25 or in default thereof to suffer one day in jail for each dollar unpaid, and to the payment of the costs.

The appellant has filed no brief and the record shows no statement of the case nor bill of exceptions. In the oral argument the discussion was devoted chiefly to the meaning of the language quoted in the complaint, it being urged that the words therein set forth should not be considered as slanderous in their ordinary, everyday meaning and acceptation. It was also suggested without citation of authority that the court in its interpretation of the phrase in question should take a liberal view of the matter upon grounds of public policy and in the interest of freedom of speech and the right of all citizens to discuss public men and matters of public interest. We fully concur in this last-mentioned proposition, although

in the view we take of the case we need not consider at length the various shades of meaning that the alleged slanderous, statement might or might not convey.

Free speech in Porto Rico is fully guaranteed by section 3 of an Act to Define the Rights of The People, approved February 27, 1902, which reads as follows:

"Section 3.—Freedom of speech shall not be impaired and every person in Porto Rico shall be free to speak, write or publish whatever he will on any subject, being responsible, however, for all abuse of that liberty."

We should not lose sight of this provision nor of the time-honored constitutional principle therein sought to be preserved, in applying to cases like the present our recent act defining and punishing the crime of slander.

Slander is not a crime at common law but in some of the States, as in Porto Rico, statutes have been passed making certain slanderous charges criminal offenses. The most common provisions, however, relate to charges imputing to a female a want of chastity and no cases in point are found construing a statute similar to ours. 25· Cyc., 569, and notes; Newell on Slander and Libel, page 920, sec. 30.

We find a close analogy, however, in civil suits to recover damages for slander and the principles involved would seem to apply *a fortiori* to a criminal action. Thus in *Sillars* v. *Collier,* 6. L. R. A., 680, the words spoken of the plaintiff were as follows:

"I am sorry that the representative from this district has had a change of heart. Sometimes (slapping his hand upon his pocket) a change of heart comes from the pocket."

The court, after referring to the Constitution of the United States and that of Massachusetts, quotes from Kent's Commentaries as follows:

"Entire freedom of discussion in respect to the character and conduct of public men is deemed essential to the judicious exercise

of the right of suffrage, and of that control of their rulers which resides in the free people of the United States.''

·And then, after an interesting discussion of the language alleged in that case to be slanderous, the opinion concludes as follows:

''It is one of the infelicities of public life that a public officer is thus exposed to critical, and often to unjust, comments; but these, unless they pass the bounds of what the law will tolerate, must be borne for the sake of maintaining free speech.

''In the various cases which have been cited to us, or which have come under our observation, where, under such circumstances, actions have been maintained, the words have been considered to contain a charge of positive misconduct. Such, for instance, were *Wilson* v. *Noonan*, 23 Wis., 105; *Powers* v. *Dubois*, 17 Wend., 63, and *Littlejohn* v. *Greeley*, 13 Abb. Pr., 41.

''But where the words spoken have simply amounted to the opinion of the speaker, however strongly expressed, as to the disposition of the public officer, the actions have been held not to be maintainable. *Onslow* v. *Horne*, 3 Wils., 177; *Hogg* v. *Dorrah*, 2 Port. (Ala.), 212.

''In like manner, words conveying a suspicion that a person, not a public officer, has committed a crime, are not actionable. *Simmons* v. *Mitchell*, L. R. 6 App. Cas. 156.

''The plaintiff further avers in his declaration that it is for the interest and true dignity of the Commonwealth that the scandal of magnates shall not be permitted, and relies on the old doctrine of *scandalum magnatum* to support his declaration.

''Mr. Odgers, in his work on Libel and Slander, says that he believes no such action has been brought (in England) since 1710.

''In Townshend on Slander it is said that *scandalum magnatum* is not known in the United States. Sec. 187.

''In *Hogg* v. *Dorrah*, *supra*, the plaintiff's counsel expressly disclaimed relying upon this doctrine. The plaintiff has cited no decision or text-book to support his contention that this special remedy exists in this country, and we are of the opinion that it has never been adopted in Massachusetts. See also *Reeves* v. *Winn*, 97 N. C., 246.''

This is but an elaboration of the final proposition stated in the brief of the appellee in the same case in which Odgers,

Libel and Slander, is quoted to the effect that those who fill a public position must not be too thin-skinned in reference to comments made upon them.

In the case at bar, however, we prefer to rest our decision mainly upon the plain proposition that the words imputed to the defendant in the complaint cannot from any point of view be held to constitute a slanderous statement within the meaning of our statute. The language of the latter is too clear to require interpretation. Sections 1, 2 and 3 of the Act to Define and Punish Slander, approved March 9, 1911, read as follows:

"Section 1.—Slander is a false and malicious utterance made by word of mouth in a public manner against a natural person or a body corporate, whereby said natural person or body corporate is charged with the commission of a deed punishable by law.

"Section 2.—Slander is also a *tale* or *report* maliciously and publicly made tending to injure the honor, reputation or worthiness of a natural person or body corporate.

"Section 3.—Any slanderous statement made publicly, whether in the presence of the injured person or in his absence, shall be presumed to be malicious and shall constitute the crime of slander."

The "slanderous statement" referred to in section 3 must, of course, contain words amounting to slander within one or the other of the definitions of that term given in sections 1 and 2; otherwise it cannot be slanderous. That no utterance, however false and malicious it may be, can constitute slander under section 1 unless the commission of a deed punishable by law is charged, is not open to argument. It is equally clear that section 2 refers only to "tales" or "reports" and cannot by any stretch of the imagination, under any rules of construction susceptible of application in the interpretation of a penal statute, be held to include any word, or combination of words, that does not amount to a "tale" or a "report," however much such word or phrase may tend to injure the honor, reputation or worthiness of a natural person or body corporate.

Now, to say publicly of a mayor or of any other person or public officer that he is a vagrant (*vago*) or a vagabond (*vagabundo*) or both, giving to these words the most unfavorable meaning that can be found in the dictionaries of the language in which they were spoken, and that he should devote himself to work and to the necessities of the poor, however impolite, or questionable as a matter of taste, or offensive to the person so criticised the use of such language may be, is not to utter either a "tale" or a "report;" and it is not, nor can it be, claimed that such language charges the commission of any crime known to our Penal Code.

In *Demolli* v. *United States,* 6 L. R. A., new series 424, Hook, circuit judge, concludes his opinion as follows:

"* * *. The lines of criminal statutes are not elastic or adjustable, and the extension or stretching of them by judicial authority, even to cover conduct grossly offensive to public morals and decency, as was that of Demolli, is productive of far more evil than could result from the escape of the individual offender.

"A penal code of China authorized the judge, if he could find no criminal law precisely applicable, to be guided by the spirit of the provisions enacted for those cases most resembling that under consideration (Staunton's Penal Code of China, sec. 44, p. 43); but in this country, as was observed in *Todd* v. *United States,* 158 U. S., 278, 282, 39 L. ed., 982, 983, 15 Sup. Ct. Rep., 889, 890, 'it is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute unless clearly within its terms. 'There can be no constructive offenses, and before a man can be punished his case must be plainly and unmistakably within the statute.' "

The specific question upon which the decision of this case really hinges was not raised in this court, nor, so far as we know, in the court below. It is also true that the Spanish version of section 2 of the law above quoted reads "any word or thought maliciously and publicly spoken," etc. (*toda palabra o concepto proferido maliciosa y públicamente,* etc.), where the English version says "a tale or report maliciously and publicly made." The Spanish version, which is clearly

an execrable translation, would upon its face amply sustain the judgment, but this court has generally held, especially when the statute is new or of American origin, that in case of conflict the English text must control. *People v. Charon,* 7 P. R. R., 416; *Cruz* v. *Domínguez,* 8 P. R. R., 551; *People* v. *Torres,* 9 P. R. R., 396.

The complaint charges no offense and the judgment must be reversed and the case dismissed.

*Judgment reversed and defendant acquitted.*

Justices Wolf and del Toro concurred.

Chief Justice Hernández and Justice Aldrey signed stating that they concurred in the judgment.