[Civil No. 2084. Filed November 21, 1923.]

[220 Pac. 393.]

R. B. VINSON, Appellant, v. E. L. O'MALLEY, Appellee.

1. PLEADING — DEMURRER ADMITS ALLEGATIONS. — Demurrer to complaint admits as true everything well pleaded therein.

2. LIBEL AND SLANDER—DEMURRER ADMITS MEANING SUPPLIED BY INNUENDO, WHERE NOT CLEAR.—Where the meaning of alleged slanderous words is not clear, the demurrer to the complaint admits the meaning supplied by the innuendo.

3. LIBEL AND SLANDER—SLANDEROUS WORDS CONSIDERED TOGETHER, AND GIVEN NATURAL MEANING.—In construing words charged to be slanderous, everything said at the time and place should be considered together, and given their natural and obvious meaning.

4. LIBEL AND SLANDER—ABUSIVE LANGUAGE HELD NOT SLANDEROUS PER SE.—The words, "You d——d old incompetent s—— of a b——, I am a good mind to beat the hell out of you, and if you were not so old I would beat you to death," *held* not slanderous *per se*, being mere abuse.

———————

4. Libel or slander by words used as mere words of abuse, see note in L. R. A. 1917D, 205.

5. LIBEL AND SLANDER—OFFICE OF "INNUENDO" STATED.—The office of an "innuendo" is to aver the meaning of the language charged to be slanderous, and if the meaning is plain no innuendo is needed.

6. LIBEL AND SLANDER—INNUENDO CANNOT CHANGE IMPORT OF WORDS. An innuendo cannot change the import of the words, nor add to or enlarge their sense.

7. LIBEL AND SLANDER—STATEMENT TO COUNTY RECORDER HELD NOT SLANDEROUS PER SE.—A statement to a county recorder, "You are the most ignorant and incompetent county recorder we have ever had; you never do anything; this is one time you are going to do as I say," *held* not slanderous *per se*, notwithstanding innuendo that the words were intended, and were understood, to mean that plaintiff was an ignorant and incompetent man and county recorder, and was guilty of dereliction of duties prescribed by Civil Code of 1913, paragraph 2500, constituting ground for removal under Penal Code of 1913, sections 777–790, or for recall under Civil Code of 1913, paragraphs 3340, 3341.

8. EVIDENCE—JUDICIAL NOTICE TAKEN AS TO ELECTION OF COUNTY RECORDER.—The courts will take judicial notice as to the election of a county recorder.

APPEAL from a judgment of the Superior Court of the County of Pima. Samuel L. Pattee, Judge. Affirmed.

Mr. E. B. O'Quinn, for Appellant.

Mr. Frank E. Curley and Mr. Ralph W. Bilby, for Appellee.

ROSS, J.—The appellant sued the appellee for damages for slander. The complaint in substance alleges that, while plaintiff was the duly qualified and acting county recorder of Pima county, Arizona, and while in his office in Tucson in said county, on June 23, 1921, the defendant came to such office, and to the place where plaintiff was seated at his desk, and in the presence of the employees of the office (four

---

5. Effect of innuendo in defense of truth to civil action for libel or slander, see notes in 31 L. R. A. (N. S). 140; 50 L. R. A. (N. S.) 1040.

See 23 C. J., p. 92; 25 Cyc. 268, 346, 355, 357, 449, 469; 31 Cyc. 333.

in number) and many other persons, willfully and maliciously spoke to, of and concerning the plaintiff the following false and defamatory words:

"You are the most ignorant and incompetent county recorder we have ever had; you never do anything; this is one time you are going to do as I say."

—intending and meaning to be understood by those hearing him to mean that plaintiff was an ignorant and incompetent county recorder and an ignorant and incompetent man, and that as such he was an ignorant and incompetent public officer, and that he was guilty of both incompetency and dereliction of his duty as such officer. It is further alleged that at the same time and place plaintiff remonstrated with defendant as follows:

"O'Malley, you can't talk that way to me; take it back right now."

Whereupon defendant caught hold of plaintiff and violently shook him, saying:

"Take back hell, you G——d d——d ignorant, incompetent, crippled old s—— of a b——; if you were not crippled I would beat hell out of you right here in your own office."

—all the time holding and shaking plaintiff; that plaintiff thereupon started from his office to the sheriff's office in the same building to enlist assistance to stop defendant's conduct and language, and as he approached the main entrance from the county recorder's office defendant caught hold of him in a rough manner and continued to hold and shake him, saying:

"Vinson, you d——d old incompetent s—— of a b——, I am a good mind to beat the hell out of you, and if you were not so old I would beat you to death."

Then follows a general allegation that all of the above remarks were directed and published to, of, and concerning the plaintiff, and that they were false,

malicious, and defamatory. General damages were asked. The defendant's general demurrer was sustained, and judgment entered against plaintiff. He appeals, and presents the ruling on demurrer as error.

Everything well pleaded in the complaint the demurrer admits as true. It admits the utterance of the words as alleged, that they are false and malicious, and that they were spoken to, of and concerning the plaintiff in his official capacity as county recorder, in the presence and hearing of other persons named. *Arizona Pub. Co.* v. *Harris,* 20 Ariz. 446, 181 Pac. 373. And since the meaning of the words used in the context is certainly not clear, the demurrer for the purposes of this case also admits the meaning supplied by the innuendo. *Belknap* v. *Ball,* 83 Mich. 583, 21 Am. St. Rep. 622, 11 L. R. A. 72, 47 N. W. 674. But, even so, it is contended by defendant, the words are not slanderous *per se,* and not actionable without an allegation of special damages. It is said:

"The words (1) do not expose plaintiff to the hazard of losing his office of county recorder in consequence of their utterance, and (2) were but an expression of the opinion of defendant as to plaintiff's fitness for a political office," and therefore are not defamatory.

In construing words charged to be slanderous, everything said at the time and place should be considered together and given their natural and obvious meaning. *Nichols* v. *Daily Reporter Co.,* 30 Utah, 74, 116 Am. St. Rep. 796, 3 L. R. A. (N. S.) 339, 83 Pac. 573, and note at 807, 8 Ann. Cas. 841. Applying the rule to what defendant is alleged to have said of plaintiff, it is apparent that most of it is mere abuse of a very coarse and aggravating kind, and should never have been uttered. The common-law right of action for slander has never been construed to author-

ize a recovery by a party who has been subjected to a scolding or tongue lashing, however cutting or uncalled for. Quoting from Mr. Justice MITCHELL in *Byram* v. *Aiken,* 65 Minn. 87, 67 N. W. 807:

" . . . Libel differs from slander, where the law, in respect to our natural passions, gives no action for mere defamatory words, which it considers as transitory abuse, and not having substance and body enough to constitute an injury by affecting the reputation."

In the note to *Shepard* v. *Brewer,* L. R. A. 1917D, 199 (248 Mo. 133, 154 S. W. 116), the rule is stated as follows:

"Words of general abuse, however opprobrious, and however vexatious, do not form the subject of an action for slander unless they may bring the party charged in danger of criminal punishment, exclude him from society, deprive him of his office, or of the profits of his trade or occupation, or actually do him other special damage. Mere general abuse and scurrility, however ill-natured and vexatious, is no more actionable when written than spoken, if it does not convey a degrading charge or imputation. Against all such attacks a man needs no other protection than a good character; and the law will not suppose that damage can happen to such character from the pointless arrows of mere vulgarity."

That part of the language devoted to abuse of plaintiff may therefore be eliminated, as also that feature of the complaint charging a battery, since, as we understand the complaint, no claim of damages is made on that account. It may be doubted if the language is reasonably and naturally susceptible of the construction placed thereon by the innuendo, to wit, that plaintiff "was guilty of both incompetency and dereliction of his duty as such officer." On the contrary, it appears to us that those hearing the language would have been impressed with the idea that defendant was taking the plaintiff county re-

corder to task for not doing some official act in the way and within the time defendant wanted it done, and that defendant was there to have it done his way. Using his words: "This is one time you are going to do as I say."

Instead of being a charge that plaintiff had neglected, failed or refused to do an official duty, the words used might rather imply he had not done it in the way defendant would have done it; hence the deduction that he was the most ignorant and incompetent county recorder Pima county had ever had. The so-called defamatory words may be viewed from another angle. The ignorance and incompetency charged are only comparative. It might be that defendant's words impute to plaintiff a deficiency of the learning, skill and affability possessed by his predecessors in office, and yet not deny his fitness to perform the duties of a county recorder. To say of a person that he is uglier or duller than several others of a class does not mean that he is not possessed of good looks or intellect. And to say of plaintiff that he is the most ignorant and incompetent county recorder Pima county ever had does not necessarily mean that he is not competent to discharge the duties of the office, especially when such charge is accompanied with the explanatory words:

"You never do anything; this is one time you are going to do as I say."

It is said:

"Defamatory words . . . spoken of a person, which impute to the party unfitness to perform the duties of an office or employment of profit, or the want of integrity in the discharge of the duties of such an office or employment," are actionable *per se.* *Pollard* v. *Lyon,* 91 U. S. 225, 23 L. Ed. 308.

See, also, *Barnett* v. *Phelps,* 97 Or. 242 11 A. L. R. 663, 191 Pac. 502; *Hickerson* v. *Masters,* 190 Ky.

168, 226 S. W. 1072; 25 Cyc. 262; Newell on Slander and Libel, § 33.

The rule as stated in 17 R. C. L. 301, section 40, based upon the decision in *Sillars* v. *Collier*, 151 Mass. 50, 6 L. R. A. 680, 23 N. E. 723, is as follows:

".While a statement, in order to be defamatory of one in respect to his public office, need not import a charge of crime, yet it must go at least so far as to impute to him some incapacity or lack of due qualification to fill the position, or some positive past misconduct which will injuriously affect him in it, or the holding of principles which are hostile to the maintenance of the government."

The office of an innuendo is to aver the meaning of the language charged to be slanderous; if the meaning is plain, no innuendo is needed. The use if it can never change the import of the words, nor add to nor enlarge their sense. *Bourreseau* v. *Detroit Evening Journal Co.*, 63 Mich. 425, 6 Am. St. Rep. 320, 30 N. W. 376. As before indicated, what the defendant said does not import malversation in office, and the innuendo to the effect that it does is equally as obscure and ambiguous. Before misconduct in office is a ground of removal of the incumbent, it must be willful and corrupt. Sections 777–790, Pen. Code. Certainly, to say of an officer that he was derelict in some duty is not to charge him with corrupt or willful misconduct. In this respect the innuendo is as uninforming as the words it undertakes to explain.

We think neither the words charged as slanderous nor the innuendo can reasonably be construed as meaning the plaintiff lacked integrity in the discharge of the duties of his office, or that he was guilty of positive past misconduct which would injuriously affect him in his office, or that his incompetency was of a kind that unfitted or disqualified him for the office. Under the common law, to say of an officer that he

was disqualified and unfitted for the office, when it was a lucrative one, was slander *per se*. And as Lord HERSCHELL says, in *Alexander* v. *Jenkins* [1892] 1 Q. B. 797:·

" . . . The court will presume, or perhaps I should say the law presumes, such a probability of pecuniary loss from such imputation, in that office, or employment, or profession, that it will not require special damage to be shown."

One of the meanings ascribed by the innuendo to the words used is that the plaintiff was guilty of incompetency as such officer. The duties of county recorder are purely clerical and ministerial. His duties required him to receive all instruments that the law provides to be recorded, file them and transcribe or cause them to be transcribed into the proper records, and see that they are compared and properly indexed. The minimum qualifications of a public officer, as defined by the statute generally, will enable him to perform these duties. These qualifications are that he be twenty-one years of age, able to read and write the English language, a citizen of the state, and an elector of the county in which he is such officer. Paragraph 2500, Civ. Code 1913. A person possessing these statutory qualifications cannot be said to be unfitted to fill the office, or incompetent in a legal sense.

We are asked to presume as a matter of law that the plaintiff has suffered some pecuniary damage by reason of the abusive language defendant used towards him. But how is it possible the plaintiff suffered any damage? To traduce one in his profession, trade or business, by saying and publishing of him that he is a poor lawyer, or a quack doctor, or a dishonest merchant, is so certain to injure him in his profession, or trade, or business, in the eyes of those to whom the word is taken, as that the law will presume he has suffered the loss of clients or customers

or credit and suffered damage without alleging and proving damage; for no one wants to patronize an incapable lawyer, or a doctor who knows no medicine, or a merchant who will not meet his obligations. The plaintiff's position cannot possibly be affected in the same way. He is paid a fixed, certain salary, which, under the law, cannot be changed during his term. The only incompetency that could deprive him of his office and salary is inability to read and write the English language, and he was not charged with lacking these qualifications. Such wild, reckless, foolish, incoherent abuse as defendant was guilty of could not possibly prejudice anyone against the person to whom it was addressed. Nor do we think it likely it would have a tendency to incite the institution, as mooted by plaintiff, by the electorate of the recall of the officer thus abused. The recall under the statute (paragraphs 3340, 3341, Civ. Code) may be invoked by the petitioners setting forth in recall petition "the grounds" of the demand. However, it would be doing violence by the court to presume any number of voters would undertake to recall an officer simply because he was so unfortunate as to receive from an irate fellow citizen an unprovoked, or at least an unseemly, tongue lashing. We think it would be as equally violent a presumption to assume the language charged would affect in the least the chances of the incumbent for re-election.

The episode which is made the basis of this action is alleged to have occurred on June 23, 1921. The office of county recorder is a constitutional office, and, under the law, the incumbent is elected every two years, in the even year. The court will take judicial notice that plaintiff was elected county recorder at the November election of 1920, and that his term of office expired January 1, 1923; that there was a general election held in Pima county (as throughout the state) in November, 1922, at which

a successor to plaintiff was chosen. We think we may also take judicial notice that plaintiff was re-elected county recorder to succeed himself, and that he now is the occupant of that office. 15 R. C. L. 1107, § 38; *Lanfear* v. *Mestier,* 18 La. Ann. 497, 89 Am. Dec. 658, and note at p. 683; *Wetherbee* v. *Dunn,* 32 Cal. 106. In the latter case the court makes this statement:

"We think that the courts ought at least to go so far as to take notice as to who fill the various county offices within their jurisdiction, and the genuineness of their signatures."

Thus it is seen that what defendant said and published of and concerning the plaintiff, and which he makes the basis of his cause of action for damages, did not prevent him from being re-elected to the office he then occupied, or detract from his political popularity, or convince any considerable number of voters of Pima county that he was ignorant or incompetent or guilty of any dereliction of duty in office.

We have read all of the cases cited by plaintiff and defendant in their briefs, and a good many not cited by them, and we think we are practically correct when we say there is no case reported, especially in this country, that will support the complaint in this case. The nearest case, and the one chiefly relied upon by plaintiff, is *Spiering* v. *Andrae,* 45 Wis. 330, 30 Am. Rep. 744. In that case the defendant, in addressing a public meeting, used this language:

"The reason I did not take out my second papers was that I did not want to sit as a juror before such a damn fool of a justice."

This language was held to be defamatory or slanderous *per se.* It was construed by the court as meaning that the plaintiff was an "unfit person to exercise the duties of a justice of the peace, on account of his ignorance and incapacity." We think

25 Ariz.—36

the court went the limit in holding this language was slanderous *per se,* entitling the plaintiff to recover, without allegation and proof of any actual damage. But there is a distinction between that case and the one at bar. In the Spiering case the plaintiff was addressing a public meeting, and the language used by him, besides not being directed to the plaintiff, charged him with being a fool (or not possessing common sense), whereas, in the present case, the language was mere abuse, spoken directly to the plaintiff, and, giving it the broadest meaning, it did not charge that plaintiff was unfitted or disqualified to be county recorder. We think the distinction, though slight, is of sufficient importance to justify us in holding the Spiering case not controlling. As was said in *Sillars* v. *Collier, supra:*

"It is one of the infelicities of public life that a public officer is thus exposed to critical, and often to unjust, comments; but these, unless they pass the bounds of what the law will tolerate, must be borne for the sake of maintaining free speech. In the various cases which have been cited to us, or which have come under our observation, where under such circumstances actions have been maintained, the words have been considered to contain a charge of positive misconduct. Such, for instance, were *Wilson* v. *Noonan,* 23 Wis. 105, *Powers* v. *Dubois,* 17 Wend. 63, and *Littlejohn* v. *Greeley,* 13 Abb. Pr. 41. But where the words spoken have simply amounted to the opinion of the speaker, however strongly expressed, as to the disposition of the public officer, the actions have been held not to be maintainable. *Onslow* v. *Horne,* 3 Wils. 177; *Hogg* v. *Dorrah,* 2 Port. (Ala.) 212."

The judgment of the lower court is affirmed.

McALISTER, C. J., and LYMAN, J., concur.