Jones, J.
 

 The initiated ordinance adopted at the election on November 2, 1926, not only fixed the salaries and compensation of the officers and members of the fire department, but also established the number of its personnel. After that time, and until the year
 
 *282
 
 1932, various ordinances were adopted by the city council which, although increasing its personnel and the salaries of some of its officers, did not change the salaries of firemen, except by reducing the compensation of those serving their first year of employment. From time to time, beginning January 19, 1932, the city council adopted sundry emergency ordinances, some of which reduced the salaries and compensation of officers and members of the department. The first material reduction by the council was made by the ordinance of January 19, 1932, when it reduced the compensation of captains and firemen appreciably below the amounts stipulated in the initiated ordinance. Later further reductions in salary and compensation were made by the city council by ordinances adopted in April and August of that year. The August reduction reduced the chief’s compensation to $152 per month, the captains’ to $121.97 per month each, and the firemen’s compensation to $110.88 per month each, with a proviso that those serving their first year of employment should receive only $98.56 per month.
 

 The fundamental, legal question presented is this: May a city council alter or repeal an initiated ordinance adopted by the electors of a city? Or, as contended by counsel for the relators, can the alteration or repeal of such initiated ordinance so adopted be effected only by the adoption of a later initiated ordinance repealing provisions of the former? In the disposal of this legal question, it is important to note that the city of Steubenville has not adopted a charter. Had the city of Steubenville adopted a charter, or had the state Constitution or laws supplied definitely provisions curbing the power of the city council to repeal initiated ordinances, this cause would assume quite a different aspect. Touching this feature, the rule stated by 2 McQuillin on Municipal Corporations, 934, Section 867, is as follows: “To render the power of initiative and referendum effective, the legislative power of
 
 *283
 
 the council is commonly restricted by the provisions that, no ordinance or amendment to an ordinance adopted by the electors shall be repealed or amended by the council. In such case, an. ordinance or an amendment thereto adopted by a vote of the electorate can be repealed or amended only in the same manner.” In support of their contention that the city council cannot repeal initiated ordinances, counsel for relators place reliance on the following cases:
 
 Stetson
 
 v.
 
 City of
 
 Seattle, 74 Wash., 606, 134 P., 494;
 
 State, ex rel. Knez,
 
 v.
 
 City of Seattle,
 
 176 Wash., 283, 28 P. (2d), 1020;
 
 Allen
 
 v.
 
 Hollingsworth,
 
 246 Ky., 812, 56 S. W. (2d), 530;
 
 State, ex rel. Gabbert,
 
 v.
 
 McQueen,
 
 82 W. Va., 44, 95 S. E., 666;
 
 Holland
 
 v.
 
 Cranfill
 
 (Tex. Civ. App.), 167 S. W., 308. Taking these cases up in their order, it will be seen that they are controlled by peculiar provisions of city charters. Upon examination of those cases, one is driven to the legal conclusion that the denial of the power of a city council to repeal an initiated ordinance rests upon the fact that city charter provisions curbed the repealing power ordinarily vested in city councils, or limited such power by providing that a city council could not repeal an initiated ordinance until after a certain period. The same principle applies to legislative enactments subsequently repealing an initiated law where there is no denial of the power so to do in a state constitution. The state of Washington has a provision that no law “approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following such enactment.” (Amendment 7, Article II, Section 1 (c), Washington Constitution.) One proposition of the syllabus in
 
 Kadderly
 
 v.
 
 City of Portland,
 
 44 Ore., 118, 74 P., 710, reads: “Statutes proposed and enacted by the people are subject to the same constitutional limitations as legislative statutes, and after their adoption they exist at the will of the legislature just as do
 
 *284
 
 other laws.” This proposition is also featured in the opinion.
 

 In the
 
 Stetson case, supra,
 
 the court held that a certain specific article in the charter of Seattle superseded other provisions giving councils the power to repeal and that the right of councilmanic repeal was thereby controlled by the provisions of the city charter.. In a later case,
 
 State, ex rel. Knez,
 
 v.
 
 Seattle, supra,
 
 the court, construing the same charter, adhered to its former ruling and held that under the Seattle charter as then framed, council could not pass an amendatory or repealing ordinance. In the
 
 Allen case, supra,
 
 in the course of its opinion, the court stated the rule thus: “Looking for specific authority in relation to referendum acts of general operation or concerning municipal legislation along other lines, it is found that in order to render the plan of referendum effective, the legislative power of the city council is commonly restricted by the express provision that no ordinance or amendment to an ordinance adopted by the electors shall be repealed or amended by the council.” In the
 
 Gabbert case, supra,
 
 the court held that the council’s power to repeal was controlled by the following provision of the Charleston city charter, to wit: “No ordinance or amendment to an ordinance adopted by the voters at any such election shall be repealed or amended by the city council.” Said the court: “This provision denies to the council the usual right to amend or repeal
 
 ex mere motu.”
 
 And in the case of
 
 Holland
 
 v.
 
 Cranfill, supra,
 
 the charter provided that an ordinance adopted by a vote of the people “shall thereupon become a valid and binding ordinance of the city, and any ordinance proposed by petition or which shall be adopted by a vote of the people cannot be repealed or amended except by a vote of the people.” It is manifest that in the cases cited by counsel for the relators, powers of city councils to alter oi repeal initiated ordinances were limited by charter
 
 *285
 
 provisions. Our own capital city of Columbus has a charter form of government. Its charter provides that “no ordinance adopted by an electoral vote shall be repealed or amended within two years after its passage, except by an electoral vote.” In the instant case, it appears that Steubenville has no charter, and is therefore controlled by the state Constitution and by state laws from which city councils not controlled by home rule charters obtain thpir delegated powers. Neither the Constitution of the state nor the state Legislature has seen fit, as other states have done, to control or to curb councilmanic powers in respect to initiated legislation. An initiated law or ordinance of a non-chartered city, therefore, has no greater sanctity than legislation adopted by a city council.
 

 Counsel for the relators advance the very cogent argument that an initiated ordinance has little value if the council, within a short time thereafter, can alter or repeal it; and, furthermore, that if the council should repeal it, that a referendum could be forestalled by the council adopting an emergency clause.
 
 Shryock, a Taxpayer,
 
 v.
 
 City of Zanesville,
 
 92 Ohio St., 375, 110 N. E., 937. This argument is based on the conception, not of power but of policy. However, it loses much of its potency when we consider that the Legislature has permitted municipalities to safeguard their initiated legislation by the adoption of a charter. (Section 4227-12, General Code.) Even without charters the electors, at recurring municipal elections, have the power of defeating councilmen who fail to listen to the
 
 vox populi
 
 as expressed in their initiated legislation. The
 
 vox populi
 
 that secured the initiated legislation of 1926 might prove to be a very weak voice in 1932, when the financial depression affected the people’s pockets and denuded the city’s funds. Evidently the city council so thought, else it might not have repealed the initiated ordinance. The argument that council should not have the power of forestalling
 
 *286
 
 referenda by the adoption of emergency ordinances also goes to the question of policy. Indubitably if the council had the power to repeal, it could, by a vote of two-thirds of its members, adopt the emergency clause, in which event the repealing ordinance “shall go into immediate effect.” Section 4227-3, General Code.
 

 Under Article II, Section 1 of our Constitution, the legislative power of the state is vested in the General Assembly. Article XIII, Section 6, authorizes the Legislature to provide for the organization of cities and incorporated villages. This duty the Legislature has performed by delegating legislative powers to city councils. (Sections 4206 and 4211, General Code.) Article II, Section
 
 If
 
 of the Constitution, reserves legislative initiative powers to the people of municipalities; but those powers can only be exercised in the manner provided by law. As heretofore stated, neither Constitution nor state law has attempted to place a check upon the legislative power of the state in its control of the initiative in non-charter municipalities. In respect to such municipalities, the legislative powers delegated to councils have not been limited or qualified. Counsel for relators would have us place a non-charter city upon the same plane as a charter city, which, in respect to its proper self-government, has been constitutionally excluded from the operation of general laws. This we cannot do.
 

 The initiated ordinance of 1926 established a fire department personnel consisting of one chief, four captains and twenty-four firemen. In 1927 it increased its personnel by adding thereto four lieutenants and two additional firemen. Obviously if the initiated ordinance is not subject to change, as the relators contend, the city council had no power to increase the personnel. Yet it did so without complaint; nor would it have power to increase salaries as it did, yet that also was done without protest. If it lacked the power
 
 *287
 
 to decrease salaries, it certainly, by parity of reasoning, lacked the power of increasing them. The respondent pleads and relies upon the doctrine of laches on the part of these relators and their committee in. failing to seasonably protest against conncilmanic alterations in the ordinance initiated by the committee to the detriment of the city treasury. Since we have held that, under this record, a council of a non-charter city has the power of altering or repealing an initiated ordinance, the equitable rule of laches does not enter the picture.
 

 More than three years before this initiated ordinance was adopted, the State Bureau of Inspection and Supervision of Public Offices asked for an opinion from the Attorney General as to the power of council to repeal an initiated ordinance of the city of Newark, Ohio, with respect to “the organization and compensation of the members of the fire department.” The law officer of the state held that the council had such power. (Opinions of Attorney General, 1923, 471, Opinion 593.) On January 16, 1933 (Opinions of Attorney General, 1933, 12, Opinion 19), a similar opinion was given to the Bureau of Inspection by a succeeding Attorney General who held that, in the absence of charter provisions, municipal councils could repeal or amend initiated ordinances establishing salaries of municipal employees.
 

 We are clearly of the opinion that, in the absence of provisions to the contrary, contained either in the state Constitution or state law curbing or limiting the power of council, there is no inhibition prohibiting the city council of a non-charter city from amending or repealing an initiated ordinance adopted by the electors under the provisions of Section 4227-2, General Code; and that the ordinance adopted by the council of Steubenville in August, 1932, is a valid ordinance.
 
 *288
 
 For the reasons stated, the judgment of the Court of Appeals, denying the writ, will be affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Williams, Matthias and Zimmerman, JJ., concur.