**BURTON et al. v. CAREY, Corporation Com'r of Oregon, et al.** *

No. 7817.

Circuit Court of Appeals, Ninth Circuit.

March 20, 1936.

J. H. Stockman and G. A. Heikkila, both of Portland, Or., for appellants.

I. H. Van Winkle, Atty. Gen., Willard H. Wirtz, Atty., Corporation Commission, of Salem, Or., and D. P. Price and John F. Logan, both of Portland, Or., for appellees.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a decree dismissing a bill of complaint wherein appellants prayed for the appointment of a receiver for Union Savings & Loan Association, an Oregon corporation, which had been taken over and was being operated by the corporation commissioner of the state of Oregon. Appellants are members and shareholders of the association.

Section 52, c. 373, p. 768, Oregon Laws 1931, provides: "The directors of a savings and loan association may at any time call upon the corporation commissioner to take possession of and operate the proper-ties and business of the association in the interests of its investors, creditors and shareholders and said corporation commissioner forthwith shall comply with such request by assigning the supervisor or bonded deputy from his department to such task."

Pursuant to section 52, the directors of Union Savings & Loan Association called upon the commissioner to take possession of and operate the properties and business of the association in the interests of its investors, creditors and shareholders. The commissioner complied with their request and assigned a bonded deputy to such task on or about November 4, 1931.

Section 54, c. 373, p. 770, Oregon Laws 1931, as amended by section 15, c. 328, p. 517, Oregon Laws 1933, provides: "Whenever the losses of any mutual savings and loan association resulting from the depreciation in value of its securities or otherwise, exceed its contingent reserve fund, undivided profits, surplus and current earnings, so that the estimated value of its assets is less than the total amount due its creditors and members, the corporation commissioner, upon petition of such savings and loan association, approved by a two-thirds vote of its members at a meeting regularly called and held for that purpose, may order a reduction of its liability to its members, except upon juvenile shares, in such manner as to distribute the loss equitably among its members. If, thereafter, such association shall realize from such assets a greater amount than was fixed in the order of reduction, such excess shall be divided among members whose credits were so reduced, but to the extent of such reduction only."

Proceeding under section 54, the commissioner, on petition of Union Savings & Loan Association, approved by a two-thirds vote of its members at a meeting regularly called and held for that purpose, ordered that the association's liability to its members be reduced from $1,697,831.27 to $1,018,698.77; it having been determined by an appraisement of its assets that the estimated value thereof was less by $679,132.50 than the total amount due its creditors and members. This reduction, referred to in the pleadings as a "charge-off," was made on May 3, 1933. It was made for the purpose of, and as a basis for, negotiating a sale of the property and assets of the association, and was made subject to the approval of the circuit court of

the state of Oregon. The record does not indicate that it ever was so approved or that it ever became effective.

Section 60, c. 373, p. 772, Oregon Laws 1931, as amended by section 16, c. 328, p. 518, Oregon Laws 1933, provides that, upon taking possession of the property and business of any savings and loan association, the corporation commissioner may apply to the circuit court in and for the judicial district in which the principal office of the association is located, "for instructions or directions relating to the claims of creditors and rights of members and to such other matters affecting the interests of said association, its members and creditors," and that, upon the order of the circuit court, the commissioner "may sell, exchange or otherwise dispose of any of the real estate or other property of such association, or may transfer, sell or otherwise dispose in whole or in part, its assets, engagements, funds and property on such terms as the court shall direct and, upon the terms of sale, exchange, compromise or settlement directed by the court, shall make, execute and deliver such deeds or other instruments in writing as shall be deemed necessary to evidence the passing of the title."

Proceeding under section 60, the commissioner filed with the circuit court for the proper judicial district a petition stating that, subject to the court's approval, he had entered into a contract with O. B. Berrien for the sale and transfer to Berrien of all the property and assets of Union Savings & Loan Association, on the terms specified in the proposed contract, a copy of which was annexed to the petition. The commissioner recommended that the proposed contract be approved, executed, and carried out. The petition was set down for hearing, notice was given to all interested parties, including appellants, hearings were had, and on October 3, 1933, the circuit court made an order approving the commissioner's recommendation and directing him to execute and carry out the proposed contract. Thereupon, before the court's order could be complied with, appellants brought this suit, and, as a consequence, the Berrien contract was never executed or carried out.

Receivership was sought on the ground of maladministration. Instances of such maladministration specifically complained of were the "charge-off," or reduction in the association's liability to its sharehold-ers, and the contract for the sale of its property and assets to Berrien. There were other and more general charges of maladministration, such as the withholding of information from shareholders, the dissemination of false information, and the employment of an incompetent deputy to manage the affairs of the association, but the "charge-off" and the Berrien contract constituted appellants' principal grounds of suit.

On final hearing, the district court found that the charges of maladministration were not established, and that there was no ground for the appointment of a receiver or for granting any other relief. Accordingly, on August 3, 1934, a decree was entered dismissing the bill.

■ This appeal was taken on August 31, 1934. Thereafter, subject to the approval of the circuit court, the commissioner and Berrien entered into an agreement abrogating and rescinding their contract, no part of which had been executed or carried out. On petition of the commissioner and after due notice and hearing, the circuit court, on January 25, 1935, approved, ratified, and confirmed the abrogation and rescission of the Berrien contract. Because of these facts, occurring since the appeal was taken, appellees have moved for dismissal, on the ground that the controversy has become moot. Undoubtedly, by the rescission of the Berrien contract, all questions relating to that contract have become moot, but, as previously noted, these are not the only questions in the case. The motion to dismiss is therefore denied.

■ Appellants have filed eleven assignments of error, the first of which is that "the Decree and rulings are contrary to the 14th Amendment of the Constitution of the United States, in that Chapter 328, Oregon Laws 1933, and particularly Section 60 thereof, was passed after the stock subscription contract involved herein of the plaintiffs [appellants] was entered into, and is retroactive and deprives the plaintiffs of their property without due process of law." As specified in appellants' brief, this alleged error is that "the decree is contrary to the 14th Amendment of the Constitution of the United States, in that chapter 328 Or. Laws 1933, particularly section 60, authorizing a sale of the assets is retroactive and thus deprives the plaintiffs of property without due process of law." This alleged error relates solely to the Berrien contract. Since all questions

660

relating to that contract have become moot, the question sought to be raised by this assignment will not be considered. May Hosiery Mills v. United States District Court (C.C.A.9) 64 F.(2d) 450, 452.

■ The second assignment of error is that "the action of the Corporation Commissioner of Oregon is in violation of the Constitution of the State of Oregon, article 1, § 21, for the reason that it impairs the obligation of the contracts of the plaintiffs herein." The third assignment is that "the Acts of the Corporation Commissioner are illegal and unconstitutional under chapter 373, p. 741, Oregon Laws, 1931." These assignments do not set out any error of the court, but merely criticize the "acts" and "actions" of the commissioner. What acts or actions are referred to is not indicated. Under our rule 11, requiring assignments of error to "set out separately and particularly each error asserted and intended to be urged," these assignments are wholly insufficient. They present nothing for review and will not be further considered. Meehan v. United States (C.C.A.9) 70 F. (2d) 857, 859.

■ The fourth assignment is that "the attempt to charge off the accretion to which the shareholders are entitled as a part of their investment is depriving them of property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States." The fifth assignment is that "the charge-off of assets of the Union Savings and Loan Association as made by the Corporation Commissioner is in direct violation of chapter 373, Oregon Laws 1931, § 54, in that said law expressly reserves for the shareholders any accretions." The sixth assignment is that "the attempted charge-off of assets of said Association by the Corporation Commissioner was not in conformity with the law and not as provided for by the law for the purpose of reorganization, but was illegal in that it was used for the purpose of fixing an up-set price for a sale privately made." Here again appellants set out no error of the court, but merely criticize the commissioner's action. So far as the record shows, the "charge-off" complained of was never approved and never became effective. There is nothing to indicate that the decree in this case was based on any finding or assumption that the "charge-off" was proper or legal. The question of its propriety or legality was not directly passed on by the trial court. The trial court did find that there was no maladministration. That finding is amply supported by the evidence. We hold, therefore, that these assignments are without merit.

■ The seventh assignment is that "the evidence showed that there was maladministration, dishonesty and crookedness in regard to the affairs of the said Association and that a receiver should have been appointed for said Association by the Trial Court." The eighth assignment is that "the evidence showed that there were gross irregularities and illegal transactions involving the Corporation Commissioner and the burden of proof should have been upon the Defendants [appellees] rather than requiring the plaintiffs to assume the burden of the entire proof, regardless of the irregularities and crookedness shown." These assignments are too general, in that they do not specify with particularity any alleged act of maladministration, dishonesty, or crookedness or any alleged irregularity or illegal transaction. If any question is raised by these assignments, it is the question of the correctness of the trial court's finding that there was no maladministration. That finding is amply supported by the evidence and is, we think, clearly correct.

The ninth, tenth, and eleventh assignments relate specifically and exclusively to the Berrien contract. The questions thereby sought to be raised have become moot and will not be considered.

■ There is here no showing of necessity for interference with the commissioner's exercise of the powers vested in him by the state law. In the absence of such necessity, the appointment of a receiver would be improper. Pennsylvania v. Williams, 294 U.S. 176, 182, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166; Gordon v. Ominsky, 294 U.S. 186, 188, 55 S.Ct. 391, 79 L.Ed. 848; Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 192, 55 S. Ct. 386, 79 L.Ed. 850; Gordon v. Washington, 295 U.S. 30, 36, 55 S.Ct. 584, 79 L.Ed. 1282.

■ The appointment of a receiver is the sole relief prayed for by appellants. No further disposition of the property or assets of the association is asked for. Receivership is sought, not as being ancillary to any form of final relief, but as an end in itself. In such a case, a federal court of

equity will not appoint a receiver. Gordon v. Washington, supra.

Decree affirmed.