**JACKSON v. DENVER PRODUCING &
REFINING CO. et al.**

No. 1598.

Circuit Court of Appeals, Tenth Circuit.

April 30, 1938.

J. R. Keaton, of Oklahoma City, Okl. (Frank Wells and D. I. Johnston, both of Oklahoma City, Okl., on the brief), for appellant.

Stanley B. Catlett, of Oklahoma City, Okl., for appellee Denver Producing & Refining Co.

Leon Shipp, of Oklahoma City, Okl. (A. L. Jeffrey, of Oklahoma City, Okl., on the brief), for appellee Oklahoma City.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

Mary C. Jackson, a citizen of Florida, instituted this suit against Denver Producing & Refining Company, a corporation organized under the laws of Oklahoma, and the City of Oklahoma City, a municipality in Oklahoma. The purpose of the suit was to enjoin the Denver Company from drilling wells for oil and gas and from the production of such minerals upon lots B and D, amended plat of property of Oklahoma Cotton Compress Company, Southwestern Cotton Oil Company, and W. W. Bierce, in Oklahoma City; and to enjoin the city from issuing permits authorizing the drilling of wells for oil and gas upon any of the property described in Ordinance No. 4475.

The bill, filed June 29, 1933, alleged that plaintiff owned three lots in Military Addition to Oklahoma City with a two-story brick building thereon in which tenants conducted a wholesale business; that the lots and building were of the aggregate value of $60,000; that there were zoning ordinances in the city; that the property of plaintiff was within a wholesale and industrial zone; that blocks B and D were located a short distance from the property of plaintiff; that the Denver Company owned an oil and gas lease covering such property; that it had been located in a wholesale and industrial zone in which the drilling of wells for oil and gas was not permitted; that on June 9, 1933, the city council of the city purported and attempted to pass and the mayor approved Ordinance No. 4475, which undertook to extend the limits of zone U-7, an oil and gas district, to include blocks B and D; that an attempt to add an emergency clause to such ordinance failed for lack of sufficient votes; that on June 12th, certain citizens, taxpayers, and bona fide residents of the city filed with the clerk of such city a notice in writing of intent to hold a referendum upon such ordinance; that

on June 13th, the council voted to reconsider the question of adding the emergency clause, and upon reconsideration voted to affix it; that on the following day the city issued to the Denver Company drilling permits authorizing the drilling of wells on such property; that the Denver Company had begun drilling operations and, unless restrained, it would continue and would secure or attempt to secure the production of oil and gas from such property; that such drilling operations and the production of oil and gas subjected and would in the future subject the property of plaintiff to the constant danger and hazard of destruction through explosion and fire; that because of such hazard, fire insurance companies were threatening to cancel and would cancel policies of insurance upon such property; that companies would refuse to write new policies or would greatly increase the rates; that cancellation of the insurance or inability to secure new insurance except at exorbitant rates would virtually destroy the value of the property for sale, rental, or other purposes; that it was fit exclusively for wholesale and industrial purposes; and that the acts of the Denver Company would render it worthless. The power of the council to add the emergency clause was challenged, and the validity of the ordinance was attacked on other grounds. The amended and supplemental bill, filed August 1, 1933, alleged that on July 10th, and within the time provided by law, a petition in due form and bearing the requisite number of signatures seeking a referendum on Ordinance No. 4475 was duly filed; and that by reason of the filing of the notice and the petition, the city lost jurisdiction of such ordinance and was without power to affix the emergency clause thereto. The validity of the ordinance was again attacked on other grounds.

On July 19, 1933, the defendants filed separate motions to dismiss the bill for the reason that it failed to state facts constituting a cause of action cognizable in equity; and on January 14, 1936, the city filed an amended motion to dismiss the bill and the amended and supplemental bill on substantially the same grounds, and for the additional reason that the cause of action had become moot because (1) on September 14, 1934, the city council passed and enacted Ordinance No. 4578, which was identical in all material respects with Ordinance No. 4475 except that it contained a repealing clause and an emergency provision which complied with the law; (2) the referendum on Ordinance No. 4475 was not submitted to the electors at the next succeeding general municipal election held after the filing of the petition, and by reason of the failure to submit it at that time the proceedings for referendum became void and Ordinance No. 4475 was thereafter valid; and (3) the city issued permits to the Denver Company and others to drill seventeen wells within the territory in question, five of which were on property owned by the city in fee; such wells were allowed to produce and large quantities of oil had been produced from them; the damages of which plaintiff complained had ceased to exist; and the questions involved had become moot.

The court entered an order of April 9, 1937, reciting that Ordinance No. 4578 was enacted on September 14, 1934; that no election had been held on the referendum; that wells had been drilled within the area; that the entire portion of the city in that area was then being developed for oil and gas; and that so far as the relief prayed for was concerned, the questions had become moot. The order concluded with a provision sustaining the motion, and in effect dismissing the action. Plaintiff appealed.

Section 5889, Oklahoma Statutes 1931, 34 Okl.St.Ann. § 53, provides that no ordinance or resolution of a municipality shall become operative until thirty days after its passage and approval unless it is passed over the veto of the executive officer, or unless it carries an emergency clause in a separate section adopted by a three-fourths vote of all members elected to the council taken by ayes and noes. Ordinance No. 4475 did not contain such a clause when it was enacted and approved on June 9th; and it has been expressly held by the Supreme Court of the state that the subsequent action of the council in attempting to fix it was a nullity, that the ordinance was subject to referendum, and that the petition for referendum was seasonably filed. State v. Pulliam, 168 Okl. 632, 37 P.2d 417, 96 A.L.R. 1294.

Article 18, section 4(b), of the Constitution of Oklahoma, provides that a petition for either the initiative or referendum in the government of a municipality shall be signed by qualified electors residing within such municipality equal in number to 25 per cent. of the total number of votes cast at the next preceding election; and section 4(d) provides that when such petition demands a referendum vote upon an ordinance other than the grant, extension, or renewal of a franchise, the chief

executive officer shall submit such ordinance to the qualified electors of the municipality at the next succeeding general municipal election. These and other provisions in the Constitution relating to the right of the initiative and referendum are not self-executing; but at its first session after statehood the Legislature enacted a comprehensive statute carrying the reserved powers into effect. Ex parte Wagner, 21 Okl. 33, 95 P. 435, 18 Ann.Cas. 197; Atwater v. Hassett, 27 Okl. 292, 111 P. 802; Ex parte Griggs, 63 Okl. 138, 163 P. 325; Simpson v. Hill, 128 Okl. 269, 263 P. 635, 56 A.L.R. 706. It was alleged in the bill that the petition bore the requisite number of qualified electors, and the motions to dismiss necessarily admitted the allegation. It plainly was the duty of the chief executive of the city to cause Ordinance No. 4475 to be submitted to the electors at the next general municipal election after the date on which the petition was filed.

■ Judicial knowledge may be taken of the fact that the city adopted the charter form of government in accordance with article 18, section 3(a), of the Constitution, and that article 5, section 10, of the charter provides that all general elections shall be held on the first Tuesday in April of each odd-numbered year. Pitts v. Allen, 138 Okl. 295, 281 P. 126; Perrine v. Bonaparte, 140 Okl. 165, 282 P. 332; City of Ardmore v. Excise Board of Carter County, 155 Okl. 126, 8 P.2d 2.

■ Disposition was made of the case upon the pleadings. No evidence was submitted respecting the submission of the referred question. Defendants assert that it was not submitted at the general municipal election held in April, 1935. Plaintiff does not controvert the statement. Instead, she asserts that the trial court could not take judicial cognizance of the facts. It has been held that a court will take judicial notice of the results of an election for the removal of a county seat, Andrews v. Knox County, 70 Ill. 65; Gibson v. Board of Supervisors, 20 Ariz. 222, 179 P. 640; the re-election of a county recorder, Vinson v. O'Malley, 25 Ariz. 552, 220 P. 393, 37 A.L.R. 877; the election of new members of a board of equalization while the action was pending, Payette County v. Baldridge, 50 Idaho 310, 296 P. 194; and of the fact that an election was held in a certain city at a certain time, Wabash Ry. Co. v. City of Gary, 191 Ind. 394, 132 N.E. 737. It is to be noted that in each of the cases the court took cognizance of an affirmative fact, but like notice certainly can be taken of a negative fact coming from the same source. We entertain no doubt that on sound principles judicial notice can be taken of the fact that the question presented by the referendum was not submitted to the electors or voted upon at the general municipal election held in April, 1935.

■ Premised upon the fact that the question was not submitted at that election, the Denver Company and the city contend that the entire proceedings looking to the referendum lapsed and that Ordinance No. 4475 is in force and effect. It doubtless is the duty of those who sign a petition and other qualified electors interested in the subject matter to compel by mandamus the submission of the referred question at the time fixed by law if the officers of the city charged with the responsibility of causing it to be submitted indicate their unwillingness or refusal to take the requisite steps to that end. Here the Supreme Court of the state held that the petition was properly filed within the time fixed by law and awarded mandamus against the city clerk to compel him to further proceed according to law. State v. Pulliam, supra. The record fails to indicate that any effort was thereafter made to compel by mandamus the chief executive of the city to cause the question to be submitted at the ensuing general election. But article 5, section 3, of the Constitution of the state, relating to acts of the legislature, provides that any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise; and article 18, section 4(a), expressly reserves to the people of a municipality all of the powers of the initiative and referendum reserved to the people of the state and its respective counties and districts. Construing the two provisions of the Constitution together, it is manifest that once an ordinance has been suspended by the filing of a petition for referendum it remains in abeyance without force and effect until a vote is had upon it and it is approved by the requisite vote.

The right of referendum cannot be defeated and an ordinance which has been suspended cannot be vitalized by failure or refusal to submit the question to the electors. If it could, the right expressly reserved to the people would immediately become a

vain and empty nothingness. Ordinance No. 4475 has never become effective; it is still suspended.

Strong reliance is placed upon Ordinance No. 4578 to sustain the order of dismissal. Its attempted passage occurred after the petition for referendum was filed and prior to the next general municipal election. The council undertook to pass it while the former ordinance was in abeyance awaiting a vote. It purports to enact the substance of the former ordinance and it contains a general repealing clause. It has been held in Missouri and in Maine that the right of referendum is absolute; that when it has been invoked by the filing of the requisite petition, the legislative body is stripped of all jurisdiction to legislate upon the subject matter until the vote is had; and that no act can be passed during the interim either re-enacting the substance of the referred measure or repealing it. State v. Becker, Mo.Sup., 240 S.W. 229; In re Condemnation of Property, Mo.Sup., 263 S.W. 97; In re Opinion of the Justices, 132 Me. 512, 174 A. 853. And the Criminal Court of Appeals of Oklahoma has held that the power of the legislative body to re-enact the substance of a referred statute is suspended from the time the petition is filed until the election is held at which the vote is cast; but that the suspension of power does not continue after the election. Leach v. State, 17 Okl.Cr. 322, 188 P. 118. And it is settled law in Oklahoma that a city council may repeal, alter, or change an ordinance which was adopted by the voters under the initiative provisions of the Constitution of the state and the charter of the municipality. Granger v. City of Tulsa, 174 Okl. 565, 51 P.2d 567. Furthermore, it may be that the same right extends in that state to a statute or ordinance which has been referred to the electors and approved by the requisite vote. See notes appended to State v. Cartledge (129 Ohio St. 279, 195 N.E. 237), 97 A.L.R. 1040. But no such factual situation is presented here. In this instance, the council essayed to pass the subsequent ordinance after the petition for referendum had been filed and before the time of the election at which the question was to be submitted to the voters. The council was clearly without jurisdiction to pass it at that time, and it has no force.

In further effort to sustain the dismissal of the action, it is urged with vigor that all questions in suit have become moot. A court will decide only real controversies in which the rights of parties are actually involved, not abstract questions. It will not proceed to a determination when its judgment or decree cannot grant relief for want of a subject matter upon which it could operate with effect. Southern Pac. Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310; United States v. Alaska Steamship Co., 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808; Brownlow v. Schwartz, 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620. The parties admit that permits were issued to the Denver Company, and that its wells have been completely drilled. It may be conceded that all questions touching the drilling of those wells are moot. But plaintiff seeks more than an injunction against the drilling of such wells. She seeks to enjoin the city from issuing permits to any and all persons authorizing the drilling of wells within the extended area in question, and she seeks to enjoin the Denver Company from drilling for oil and gas and from the production of such minerals. The bill and the amended bill and supplement bill charge, among other things, that the production of oil and gas will wrongfully subject her property to the constant and continuing danger of destruction by explosion and fire; that such danger will destroy the value of the property for the purpose of sale or rental; and that it will be rendered worthless. The controversy is not moot in respect to these questions. It continues so far as they are concerned and the court is empowered to determine them with a subject matter upon which the decree could operate effectually. A case will not be dismissed where only a part of the controversy has become moot and other questions remain for decision. Lincoln Printing Co. v. Middle West Utilities Co., 7 Cir., 74 F.2d 779; Burton v. Carey, 9 Cir., 82 F.2d 657; Cramer v. Phœnix Mut. Life Ins. Co., 8 Cir., 91 F.2d 141.

The suggestion has been made that because of laches plaintiff cannot be heard now to complain of the Denver Company for the continued production of oil and gas; but that question was not presented in any form to the trial court, and it cannot be raised initially on appeal.

The order of dismissal is reversed and the cause remanded.