**Daniel P. STAKE, Appellant,**

v.

**CITY OF KINGFISHER, Board of Commissioners, et al., Appellees.**

**No. 62185.**

Court of Appeals of Oklahoma, Division No. 3.

Sept. 24, 1985.

Released for Publication by Order of the Court of Appeals Oct. 25, 1985.

Daniel P. Stake, Oklahoma City, pro se.

Paul I. Schulte, Kingfisher, for appellees.

HANSEN, Judge:

Daniel P. Stake filed this class action in person and for all persons similarly situated against the City of Kingfisher its Board of Commissioners and the Kingfisher County Election Board seeking to set aside as void a special election in which the

voters adopted certain amendments to the city charter. The Governor approved the amendments and we assume they have been filed and recorded.

The City of Kingfisher is a municipality with a form of government set by charter. At the time of the election the charter did not contain a procedure for its amendment. It did state that the city reserves all rights and powers conferred upon municipal corporations by Article 18 of the Constitution of the State of Oklahoma.

Certain charter amendments were proposed by a properly signed and approved initiative petition, the sufficiency of which is not challenged here. Pursuant to a Resolution of the Board of City Commissioners, the mayor and the president of the board called a special election to approve or reject the amendments. The election was held in January of 1984, the only issue on the ballot being the charter amendments. The amendments were adopted.

Appellant filed the present action seeking, among other things, to have the election declared invalid. The basis for his challenge at trial and in this appeal is that under our constitutional and statutory scheme an election on an initiative petition to amend a city charter must be held at a general election. Because the voters approved the amendments at a special election, he argues, they are invalid.

Article XVIII, Section 3(a) of the Oklahoma Constitution expressly authorizes amendments to a home rule charter. This section provides in pertinent part:

"... The charter so ratified may be amended by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof (or by petition as hereinafter provided) *at a general or special election,* and ratified by a majority of the qualified electors voting thereon, and approved by the Governor as herein provided for the approval of the charter." (emphasis supplied.)

Section 4(a) reserves the powers of the initiative to the people of a municipal corporation:

"The powers of the initiative and referendum, reserved by this Constitution to the people of the State and the respective counties and districts therein, are hereby reserved to the people of every municipal corporation now existing or which shall hereafter be created within this State, with reference to all legislative authority which it may exercise, and amendments to charters for its own government in accordance with the provisions of this Constitution."

Section 4(e) refers specifically to amendments to a municipal charter by initiative, it states:

"When such petition demands an amendment to a charter, the chief executive officer shall submit such amendment to the qualified electors of said municipal corporation *at the next election of any officers of said corporation,* and if, at said election, a majority of said electors voting thereon shall vote for such amendment, the same shall thereupon become an amendment to and a part of said charter, when approved by the Governor and filed in the same manner and form as an original charter is required by the provisions of this article to be approved and filed." (emphasis supplied)

When the Legislature adopted the present municipal code [1], it provided a procedure implementing these constitutional provisions. Section 13–111 of the code provides for two methods for amending a charter:

"Amendments to a municipal charter may be proposed by:

1. An initiative petition, signed by a number of the registered voters residing in the municipality equal to at least twenty-five percent (25%) of the total number of votes cast at the preceding general election. Charter amendments proposed by initiative petition shall be governed in all respects by the provisions of Sections 15–101 through 15–110 of this title; or

1. 11 O.S. 1981 §§ 1–101 et seq., effective July 1, 1978.

2. A resolution of the municipal governing body.

..."

Following the directions of this section we examine section 15–109. This states: "Whenever a referendum is demanded against any measure passed by the municipal governing body, or *whenever an initiative petition demands an amendment to the municipal charter, the question shall be submitted* to the registered voters of the municipality for their approval or rejection *at the next general municipal election.*" (emphasis supplied)

Appellant persistently argues under these provisions the special election was void. He does not contest the sufficiency of the initiative petition or any other procedures involved. He contends all charter amendments proposed by initiative petition must be submitted to the voters at a general election, never at a special election.

The election was called pursuant to a resolution of the Board of City Commissioners. The proclamation read in pertinent part: [2]

"Pursuant to the provisions of Title Eleven (11) of the Oklahoma Statutes, Section (13–106–107–111) and Title Eleven (11), Article Fifteen (15), Section Fifteen (15–101–102–103–104–105–106–107–108–109); and pursuant to the Resolution of the Board of City Commissioners of the City of Kingfisher, Oklahoma adopted on the 5th day of December, 1983; and pursuant to the authority given to me as Mayor of the City of Kingfisher and President of the Board of the City Commissioners of the City of Kingfisher which authorizes the calling of an election for the purposes that are hereinafter set forth:

I, the undersigned Mayor, and President of the Board of City Commissioners of the City of Kingfisher, Oklahoma do hereby call a Special Election pursuant to Title Eleven (11) and the Sections aboved [sic] referred to of the Oklahoma Statutes Annotated thereof, to be held within the limits of the City of Kingfisher, Oklahoma on the 17th day of January, 1984 within the voting precincts of the City of Kingfisher as provided by law for the purpose of submitting to the qualified electors of the City of Kingfisher, Oklahoma for the approval or rejection of the following Proposition:

Shall the Charter of the City of Kingfisher be amended by initiative Petition filed July 14, 1983, amending ......;"

Appellant submits the special election was *improperly* held under Section 13–111 subsection 1. Appellees stress the special election was *properly* held under Section 13–111 subsection 2.

Both parties' arguments center around two cases decided under the constitutional provisions controlling this case, but under a now repealed statute specifically authorizing special elections on initiative petitions to amend a city charter.[3]

In *Sharp v. Lee*, 201 Okl. 49, 200 P.2d 756 (1949), a special election was called by the mayor of the City of Muskogee after a sufficient initiative petition was submitted. The measure was defeated. Protaganists claimed the election was invalid as it should have been handled by county election machinery. The Supreme Court held the general and special elections authorized by the Constitution and statues were city elections, thus the mayor was acting within his scope of authority in appointing the election officials.

*Ex parte Griggs*, 63 Okl. 138, 163 P. 325 (1917) dealt with an ordinance proposed by initiative petition, governed by another section of the Constitution. The Supreme Court held under Article 18, § 4(c), submission of a proposed ordinance to the legislative body is a condition precedent to submitting it to the vote of the people. On this basis the Court found the ordinance was not legally adopted.

---

**2.** The actual content of the amendments is not pertinent to this appeal.

**3.** *See* 11 O.S. 1941 § 561.

Neither of these decisions is much support for either the Appellant or the Appellees.

The procedures for amending municipal charters should be as nearly practicable the same as those for measures relating to the people of the state at large.[4] 34 O.S. 1981 § 24 governing initiative procedures on statewide matters provides:

"The procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded.

Thus, if there was substantial compliance with the above cited sections of the Constitution and the statutes, the trial court was correct in refusing to set aside the election.

■■■ If a statute does not in express terms declare an election void for violation of its provision, the election will be sustained and the violation of the statute will be treated as an irregularity going to the form instead of the substance.[5] Where statutes provide certain things shall be done in a particular manner but do not declare their performance essential to the validity of the election, they are regarded as directory rather than mandatory if they do not affect the actual merits of the election, unless it appears the violation prevented the voters from giving free expression of their will.[6]

In *Hembree v. City of Stilwell*, 597 P.2d 1218 (Okla.1979), a petition was filed in the Supreme Court of Oklahoma seeking a prerogative writ invalidating an election and alleging failure of city officials to comply with certain enumerated pre-election formalities. The Court stated when failure to meet statutory formalities is invoked *after* the balloting takes place, the results of an election will not be invalidated absent proof of fraud or corruption so pervasive as to

taint the entire process. There, as in the present case, neither the record nor the briefs gave any intimation of any vitiating defects.

Our constitutional and statutory scheme comprises a system whereby both the people and the city commission could have proposed the charter amendments. Neither could block the efforts of the other during the process.[7] The proposed amendments could have been presented through the initiative process or through a resolution by the city commission. Under § 15–109 the initiative must be submitted to the electorate at the next general municipal election. The apparent purpose of this requirement is to ensure that it is considered promptly. Otherwise the commission could delay or circumvent the initiative process. Any construction or application of the scheme to cause, instead of prevent delay in submitting the issue to the people would run counter to the purpose of the initiative process. To say a general election is the only way an initiative petition may be presented to the people is to allow the scheme to defeat itself.

This is not to say that irregularities and defects in carrying out constitutional and statutory requirements for the holding of an election may be ignored prior to an election. It would be the duty to those who signed a petition and other qualified electors interested in the subject to compel by mandamus the submission of the initiative question at the time fixed by law. The right of the initiative petition cannot be defeated by failure or refusal to submit it to the electorate. If it could, the right expressly reserved to the people would become a nullity.[8]

The election proclamation here admittedly gave mixed signals to the electorate as to whether the amendments were being presented through a resolution of the com-

---

4. 11 O.S. 1981 § 15–102.

5. *Lamb v. Palmer*, 79 Okl. 68, 191 P. 184 (1920).

6. *State ex rel. McNeill v. Long*, 178 Okl. 409, 63 P.2d 60 (1936); *McCarter v. Spears*, 157 Okl. 168, 11 P.2d 489 (1932).

7. *Oklahoma Tax Commission v. Smith*, 610 P.2d 794 (Okla.1980).

8. *Jackson v. Denver Producing and Refining Company*, 96 F.2d 457 (10th Cir.1938).

mission or through the process of the initiative. 11 O.S. 1981 § 16–112 empowers a municipal governing body by resolution to authorize the mayor to call a special·election for any purpose authorized by law. Presentation of the amendments by resolution of the commission calling a special election is a valid method for presenting charter amendments to the electorate.

 Every reasonable presumption will be indulged in favor of the validity of an election.[9] It is the duty of the courts to sustain an election where it can be done by a liberal construction of the laws rather than to defeat it by requiring a rigid conformity to the law. The end to be accomplished in every case, not the means, is the chief purpose.[10]

 To defeat this election the appellant would have to allege and prove the irregularities of which he complained changed the result of the election. Appellant does not state how he and others in the class were injured by presentation of the amendments at a special election rather than a general election. Elections are expensive, time consuming endeavors. The people have spoken, amending the charter as set out in the initiative petition. There would be no benefit to the citizenry to require these issues to be again placed before them.

If it were error to submit the initiative petition to the people through a resolution of the commission at a special election, it did not affect the merits so as to defeat the result. We hold there was substantial compliance with the Constitution and statutory requirements for amending the city charter. The trial court is AFFIRMED.

AFFIRMED.

HUNTER, P.J., and HOWARD, J., concur.

---

**9.** *City of Tecumseh v. City of Shawnee,* 148 Okl. 128, 297 P. 285 (1931).

**10.** *Gardner v. Scott,* 205 Okl. 333, 237 P.2d 863 (1951).